**Lois LINQUIST and Alberta E. Burns, Appellees,**

**v.**

**Otis R. BOWEN, Secretary of the Department of Health and Human Services, and United States Railroad Retirement Board, Appellants.**

**Nos. 86–1486, 86–1790 and 86–2075.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 8, 1986.

Decided March 9, 1987.

Rehearing and Rehearing En Banc Denied June 3, 1987.

Frank A. Rosenfeld, Washington, D.C., for appellants.

Gill Deford, Los Angeles, Cal., for appellees.

Before LAY, Chief Judge, HEANEY and BOWMAN, Circuit Judges.

LAY, Chief Judge.

Lois Linquist, now 78 years old, receives retirement benefits under the Social Security Act (SSA) and the Railroad Retirement

Act (RRA).[1] Each Act provides for a fifty percent reduction in benefits if a recipient's outside earnings exceed a certain level in a year. *See* 42 U.S.C. § 403(b) (1982)[2] and *id.* § 403(f)(3)[3] (the SSA provisions); 45 U.S.C. § 231a(g)(2) (1982)[4] (the RRA provision). Linquist earned $3415 in 1977, when the amount of earnings exempt under the Acts was $3000.[5] Pursuant to the RRA recoupment provision, the Railroad Retirement Board (the Board) notified Linquist that she had been overpaid by $207, fifty percent of her excess earnings. She repaid that amount to the Board. Seven months later, the SSA similarly informed Linquist that she owed it $207 because of the same $415 of 1977 excess earnings. The agency stated that it would withhold that amount from her future benefits. Linquist unsuccessfully challenged that action through the SSA's administrative process. She then filed her complaint in district court, naming the Board and the Secretary as defendants.[6]

The district court,[7] on January 31, 1986, ordered relief for a nationwide class both prospectively and retroactive to 1972.[8] *See Linquist v. Bowen*, 633 F.Supp. 846, 866–67 (W.D.Mo.1986). On May 22, 1986, the court denied the defendants' request for a stay and ordered full implementation of the remedial program. This court granted the government's motion for a stay on July 17, 1986, pending the present appeal. On appeal, the government challenges the class certification, the district court's jurisdiction over the Board, and the merits of the decision reached. For the reasons set forth below, we affirm the district court's decision in all respects.

## I. Jurisdiction

The district court based its jurisdiction on the mandamus power under 28 U.S.C. § 1361 (1982). *See* 633 F.Supp. at 853–57. The court also noted that 28 U.S.C. § 1337 (1982), which provides jurisdiction for civil cases under laws regulating commerce, was an alternative basis for its jurisdiction. *See* 633 F.Supp. at 857 n. 5. The defendants raise two distinct challenges to the district court's exercise of jurisdiction. First, the defendants claim that the class members' complaints were never properly "presented" to the Secretary, thus 42 U.S.C. §§ 405(g) and (h) precluded judicial review of all but Linquist's claim. The defendants argue that resort to the mandamus statute to avoid the exclusive provisions of § 405(h) was improper. Second, the defendants challenge the district court's exercise of jurisdiction over the Board, citing 45 U.S.C. §§ 355(f) and (g) (as incorporated by *id.*

---

1. Linquist's benefits under the SSA are based on her own work record. From the RRA she receives survivor benefits, derived from the work record of her deceased husband.

2. Section 403(b) provides: "Deductions * * * shall be made from any payment or payments under this subchapter to which an individual is entitled * * * if for such month he is charged with excess earnings, under the provisions of subsection (f) of this section * * *."

3. Section 403(f)(3) provides: "[A]n individual's excess earnings for a taxable year shall be 50 per centum of his earnings for such year in excess of * * * the applicable exempt amount * * *."

4. Section 231a(g)(2) provides: "Deductions * * shall be made from any payments to which a survivor is entitled * * * if for such month such survivor would be charged with excess earnings under [42 U.S.C. § 403(f)] * * *."

5. The exempt amount has increased over time, and currently is approximately $6000. *See* 42

U.S.C. § 403(f)(8)(D) (1982) (instructing Secretary to publish new exempt amount to match cost-of-living benefits increases).

6. Plaintiff Loretta Burns intervened in this action. The agencies acted in reverse order in her case, but with the same result. The Board and the Secretary each sought to recoup $700, fifty percent of Burns' excess earnings in 1975. The court below dismissed Burns' claims on res judicata grounds, due to the adverse decision in *Burns v. United States R.R. Retirement Bd.*, 701 F.2d 193 (D.C.Cir.1983). Burns has not appealed the dismissal of her claims, and we do not address the portion of the district court's opinion relating specifically to her.

7. The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri, presiding.

8. The year 1972 is significant because until that year both the SSA and the RRA allowed 100% offset of excess earnings. *See* Pub.L. 92–603, § 105(a)(3), 86 Stat. 1329 (1972).

§ 231g), which provide for exclusive review of Railroad Retirement Board decisions in the courts of appeals.

## A. Class Certification

The district court certified a nationwide class, which includes the following:

> All persons who are receiving or who will receive both Social Security retirement benefits and Railroad Retirement benefits and who have been or will be denied the right to retain fifty percent of their excess earnings pursuant to the joint actions of the Social Security Administration and the Railroad Retirement Board.

633 F.Supp. at 861–62, 867. The agencies challenge this certification, as they assert that only plaintiff Linquist's claim is properly advanced for judicial consideration.

■ Under the SSA, the first prerequisite to judicial review is that the claimant "present" a claim to the Secretary;[9] the second requires the claimant to exhaust fully the administrative process. *Bowen v. City of New York,* —— U.S. ——, 106 S.Ct. 2022, 2031, 90 L.Ed.2d 462 (1986); *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976). According to the defendants, Linquist was the only person to meet the nonwaivable presentment requirement.[10] The plaintiffs counter that presentment did take place, when the class members provided their earnings records to the agencies.

■ As the defendants acknowledge, nearly all of the cases in this area deal with exhaustion, rather than with presentment. However, as the Ninth Circuit noted in *Lopez v. Heckler,* 725 F.2d 1489, 1503 (9th Cir.), *vacated on other grounds,* 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984), the courts that have dealt with presentment have interpreted the requirement "liberally." Presentment is procedurally necessary to establish *entitlement* to benefits, and presentment of a claim is the natural first step that any individual seeking benefits would take. The members of the class certified below have taken this step, and they have received benefits. Subsequently, they have provided the Secretary records of their outside earnings. They thus have performed the affirmative acts required by law. Proper presentment in this nonentitlement case[11] does not necessitate a further claim, one challenging the recoupment of benefits. The Secretary is quite aware of a recipient's uninterrupted claim for the full benefits allowed by law, whether or not the particular recipient has actively challenged the double offset. We thus find the class members' claims against the Secretary are properly before the court under § 405(g) of the SSA.[12]

---

**9.** In 42 U.S.C. § 405(g) the SSA provides in part: Any individual, after any final decision of the Secretary made after a hearing to which he was a party * * * may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

**10.** The exhaustion requirement, by contrast, is waivable. *See Mathews,* 424 U.S. at 328, 96 S.Ct. at 899. Courts often have not required exhaustion in cases like the present one, with or without formal waiver by the Secretary. *See Bowen,* 106 S.Ct. at 2031; *Mathews,* 424 U.S. at 330–32, 96 S.Ct. at 900–01; *Mental Health Ass'n v. Heckler,* 720 F.2d 965, 969–70 (8th Cir.1983). Given the lack of success in Linquist's administrative appeals, we conclude that waiver of exhaustion is proper here for the entire class.

**11.** This case involves recoupment caused by excess earnings, not entitlement to benefits. The cases cited by the government are in the context of entitlement, either original or after a termination. *See Heckler v. Lopez,* 463 U.S. 1328, 1328–29, 104 S.Ct. 10, 10–11, 77 L.Ed.2d 1431 (1983); *City of New York v. Heckler,* 742 F.2d 729, 735 (2d Cir.1984), *aff'd sub nom. Bowen,* 106 S.Ct. at 2022. Those cases are inapposite in the present context.

As we stated in the text, the plaintiffs have presented their claims for benefits, and the agencies have found them entitled to benefits. This status has never been terminated. Instead, the present dispute is outside the traditional scope of 42 U.S.C. § 405(h), which requires entitlement decisions to be finalized inside the agency before any suit in federal court. Once the entitlement decision has been made and settled, the original presentment and subsequent earnings reports suffice to invoke the district court's jurisdiction.

**12.** Even if the claims were not properly presented, we think the district court's exercise of mandamus jurisdiction would have been permissible. *See Ellis v. Blum,* 643 F.2d 68, 77 n. 10 (2d Cir.1981) (indicating no presentment needed under mandamus provisions). The courts have long wrestled with the question of whether 42

## B. Jurisdiction Over the Railroad Retirement Board

■ The district court recognized that the RRA vests exclusive jurisdiction in the courts of appeals over appeals from Board decisions. Notwithstanding the provisions of 45 U.S.C. §§ 355(f) and (g) (incorporated by *id.* § 231g), the district court exercised jurisdiction over the Board under 28 U.S.C. § 1361. In challenging the district court's jurisdiction, the defendants essentially conclude that this case never could be heard in a single court, given the differing modes of judicial review. They primarily cite *Denberg v. United States R.R. Retirement Bd.*, 696 F.2d 1193, 1196–98 (7th Cir.1983) (rejecting district court jurisdiction over Board), *cert. denied*, 466 U.S. 926, 104 S.Ct. 1706, 80 L.Ed.2d 180 (1984). We agree, however, with the District of Columbia Circuit's statement in *Burns v. United States R.R. Retirement Bd.*, 701 F.2d 189 (D.C. Cir.1983), which the district court quoted, that " 'Congress did not intend to create a procedural conundrum of this kind.' " *See* 633 F.Supp. at 856 (quoting *Burns*, 701 F.2d at 192 n. 11). We think the district court properly resolved the dilemma by resorting to the mandamus statute.

The presence of both defendant agencies in one case is essential to proper determination of this important issue. The district court's exercise of mandamus jurisdiction allowed the Board to be joined, thus facilitating combined review of the agencies' interpretations of their respective recoupment statutes. We find the present circumstances more than sufficient to reach the high level of necessity that mandamus jurisdiction requires.[13]

We conclude that the district court had proper jurisdiction to hear all aspects of this case.[14]

## II. Statutory Construction

■ Our objective in interpreting a federal statute is to achieve the intent of Congress. *See United States v. American Trucking Ass'ns*, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940); *Groseclose v. Bowen*, 809 F.2d 502, 505–06 (8th Cir.1987); *Stribling v. United States*, 419 F.2d 1350, 1352 (8th Cir.1969); *Lambur v. Yates*, 148 F.2d 137, 139 (8th Cir.1945). A primary rule of statutory construction is that when a court interprets multiple statutes dealing with a related subject or object, the statutes are *in pari materia* and must be considered together. *United*

---

U.S.C. §§ 405(g) and (h) preclude district court mandamus jurisdiction over the Secretary in Social Security cases. The Supreme Court has reserved the question several times. *See Bowen*, 106 S.Ct. at 2028 n. 9; *Heckler v. Ringer*, 466 U.S. 602, 616, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984); *Califano v. Yamasaki*, 442 U.S. 682, 698, 99 S.Ct. 2545, 2556, 61 L.Ed.2d 176 (1979); *Norton v. Mathews*, 427 U.S. 524, 529–30, 96 S.Ct. 2771, 2774–75, 49 L.Ed.2d 672 (1976); *Mathews v. Eldridge*, 424 U.S. 319, 332 n. 12, 96 S.Ct. 893, 901 n. 12, 47 L.Ed.2d 18 (1976). Several courts of appeals, including this one, have held that § 405(g) does *not* preclude the exercise of mandamus jurisdiction. *See Lopez v. Heckler*, 725 F.2d 1489, 1507–08 (9th Cir.), *vacated on other grounds*, 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984); *Mental Health Ass'n v. Heckler*, 720 F.2d 965, 971 n. 17 (8th Cir. 1983); *Belles v. Schweiker*, 720 F.2d 509, 512–13 (8th Cir.1963); *Ellis*, 643 F.2d at 78–82; *Martinez v. Richardson*, 472 F.2d 1121, 1125 (10th Cir.1973).

Mandamus is an extraordinary means of federal court power, reserved for special situations of necessity. *Ringer*, 466 U.S. at 616, 104 S.Ct. at 2022. This is such a situation. First, mandamus is appropriate in a Social Security case

when the dispute does not involve entitlement to benefits per se. *Belles*, 720 F.2d at 512–13; *Mental Health Ass'n*, 720 F.2d at 971 n. 17. This case involves a collateral issue—the propriety of double recoupment. This is not an issue that Congress delegated to the agencies. *Cf. Mental Health Ass'n*, 720 F.2d at 971 n. 17 (distinguishing procedural decision from eligibility determinations delegated to agency). We find that the court's exercise of mandamus jurisdiction did not contradict sections 405(g) and (h).

13. This is not the first case in which a district court has exercised jurisdiction over the Board. *See United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980); *Yost v. Schweiker*, 699 F.2d 438 (8th Cir.1983); *Finnerty v. Cowen*, 508 F.2d 979, 984 (2d Cir.1974). *But see Denberg v. United States R.R. Retirement Bd.*, 696 F.2d 1193 (7th Cir. 1983), *cert. denied*, 466 U.S. 926, 104 S.Ct. 1706, 80 L.Ed.2d 180 (1984).

14. We leave for another day the decision on the applicability of 28 U.S.C. § 1337 (1982) in cases of this type. We do note that some support for applying § 1337 is provided in *Finnerty v. Cowen*, 508 F.2d 979, 983–84 (2d Cir.1974).

*States v. Freeman*, 44 U.S. (3 How.) 556, 564–65, 11 L.Ed. 724 (1845); N. Singer, 2A *Sutherland Statutory Construction* § 51.-01–.03 (C. Sands 4th ed. 1984). The proper comprehensive analysis thus reads the parts of a statutory scheme together, bearing in mind the congressional intent underlying the whole scheme. *See, e.g., Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 607–12, 99 S.Ct. 1905, 1910–13, 60 L.Ed.2d 508 (1979); *United States v. Freeman*, 44 U.S. (3 How.) at 564–65; *Kifer v. Liberty Mut. Ins. Co.*, 777 F.2d 1325, 1332 (8th Cir.1985).

■ There can be no question that the challenged provisions of the Social Security Act, 42 U.S.C. §§ 403(b) and 403(f)(3), and the Railroad Retirement Act provision, 45 U.S.C. § 231a(g)(2), are *in pari materia*. In fact, their language is identical due to the RRA incorporation of the SSA. In this situation, we must consider the legislative history of either Act as applying to both. And, more importantly, we must consider the congressional intent behind the entire worker retirement benefits scheme in determining how these Acts should be applied in tandem.

When Congress amended the SSA—and thus the RRA—in 1972, the clearly articulated purpose was to encourage retired persons to work. This underlying intent is not disputed by the parties in this case, and it has been recognized by the court below, *see* 633 F.Supp. at 863–66, by the majority in *Burns, see* 701 F.2d at 196, and by Judge MacKinnon's dissent in *Burns, see id.* at 209–10.

Everyone agrees that the former deduction of one dollar for every one dollar in excess earnings discouraged recipients from working. Under the 1972 amend-

ments, a person loses only one dollar for every two dollars of excess earnings. The House Report accompanying this change was strongly worded:

> [Y]our committee believes that the American people do not want a system which results in promoting welfare as a way of life. Your committee's deliberations, therefore, have been aimed toward providing adequate assistance to those who cannot help themselves, while at the same time creating a system of assistance which will maximize the incentive and the obligation of those who are able to work to help themselves.

H.R.Rep. No. 231, 92d Cong., 1st Sess. 2, *reprinted in* 1972 U.S. Code Cong. & Ad. News 4989, 4990. The Senate Report was equally definite: "The committee agrees with the President that work should be rewarded and its value to the worker increased. * * * A number of * * * provisions [including the excess earnings provision] are included in the committee bill which reflects the committee's aim of increasing the benefits of working."[15] S.Rep. No. 1230, 92d Cong., 2d Sess. 28 (1972).

As the district court and the *Burns* opinions have noted, no congressional intent was expressed either way regarding the 100% offset for dual beneficiaries. *See Burns*, 701 F.2d at 196, 198; *id.* at 210–12 (MacKinnon, J., dissenting); *Linquist*, 633 F.Supp. at 863. Congress apparently did not consider the question. *Cf. Freeman v. Harris*, 625 F.2d 1303, 1307 (5th Cir.1980) ("In essence, then, we are seeking to determine the intent of Congress as applied to a factual situation which obviously it did not foresee."). To draw a negative inference of congressional intent from vague or miss-

---

**15.** The allusion to the President stemmed from President Nixon's support of the amendments:

> A feature of the present social security law that has drawn much criticism is the so-called "retirement test," a provision which limits the amount that a beneficiary can earn and still receive full benefits. * * * The present retirement test actually penalizes social security beneficiaries for doing additional work or taking a job at higher pay. This is wrong.
>
> In my view, many older people should be encouraged to work. Not only are they pro-

vided with added income, but the country retains the benefit of their skill and wisdom; they, in turn, have the feeling of usefulness and participation which employment can provide.

President's Message to Congress Transmitting Proposals for Welfare Reform and Social Security Amendments (Sept. 25, 1969), in House Comm. on Ways and Means, 91st Cong., 1st Sess., the President's Proposals for Welfare Reform and Social Security Amendments 1969, at 12 (Comm.Print 1969).

ing legislative history would be hazardous at best. Nor should we speculate, as the government suggests that we should, that Congress *intended* to deny the amendment's benefit to dual recipients like Linquist. *Cf. St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 550, 98 S.Ct. 2923, 2934, 57 L.Ed.2d 932 (1978) ("If Congress had intended to limit its scope * * * it is not unreasonable to assume that it would have made this explicit."). Furthermore, congressional inaction in the face of ongoing 100% offsets is not sufficient to demonstrate approval of the practice. *Cf. Morton v. Ruiz*, 415 U.S. 199, 230, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974) (rejecting implicit congressional ratification of agency policy when no proof that Congress knew of the policy); *N. Singer, supra*, § 49.10, at 408.

*Freeman v. Harris*, 625 F.2d 1303 (5th Cir.1980), provides strong support for the district court's decision in our case. *Freeman* presented a closely analogous situation involving benefit offsets by the Secretary of Health, Education and Welfare. The Secretary's practice was to offset both social security disability payments and black lung benefits against state workers' compensation benefits.[16] Because both federal programs in *Freeman* allowed reduced benefits to workers' compensation recipients, the plaintiff received less under the three programs than he would have without the state program. The Fifth Circuit overturned the Secretary's literal application of the Acts involved. The court found it unacceptable to use Acts designed to *help* disabled miners to actually *harm* them. *See id.* at 1307–08. Even though Congress had not foreseen the exact situation that developed, the court honored the beneficent intent underlying the Acts.

Like the Fifth Circuit in *Freeman*, we must construe *in pari materia* provisions in light of recognized legislative policy. Congress' desire to encourage outside employment must be weighed heavily in our attempt to sort out the entire SSA and RRA scheme. This policy conflicts with the position of the Secretary and the Board. Congress would not want to encourage some, but not other, beneficiaries to work. It is clear that Congress intended to encourage all beneficiaries to work, including dual-source recipients like Lois Linquist and the other classmembers. The statutory scheme makes sense only if this overriding congressional intent is preserved. *Cf. Heckler v. Edwards*, 465 U.S. 870, 879–85, 104 S.Ct. 1532, 1537–41, 79 L.Ed.2d 878 (1984) (following intent of Congress despite literal language of statute).

### III. Conclusion

For the reasons set forth above, we conclude that the district court properly ordered the SSA and RRB to coordinate their application of the excess earnings deduction. The Secretary and the Board *together* may not recoup more than a total of one dollar for every two dollars earned above the statutory amount. We reinstate the district court's order to the agencies to produce a plan for this coordination and to devise procedures for retroactive relief.

The judgment is affirmed.

---

16. We recognize the canon of construction giving some deference to an agency's interpretation of a statutory plan that it is required to implement. *See Young v. Community Nutrition Inst.*, — U.S. —, 106 S.Ct. 2360, 2364–65, 90 L.Ed.2d 959 (1986); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); *Department of Social Services v. Bowen*, 804 F.2d 1035, 1037–38 (8th Cir.1986). Like the Fifth Circuit in *Freeman*, however, we refuse to give absolute deference to the agencies. This court often has interpreted statutes in a way contrary to the administrative viewpoint. *See, e.g., Groseclose v. Bowen*, 809 F.2d 502, 505–06 (8th Cir.1987); *Missouri v. Andrews*, 787 F.2d 270, 286 (8th Cir.1986); *Costello v. United States R.R. Retirement Bd.*, 780 F.2d 1352, 1354–55 (8th Cir.1985). As the Supreme Court has said: "Although an agency's interpretation of the statute under which it operates is entitled to some deference, 'this deference is constrained by our obligation to honor the clear meaning of a statute as revealed by its language, purpose, and history.'" *Southeastern Community College v. Davis*, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 61 L.Ed.2d 980 (1979) (quoting *International Bhd. of Teamsters v. Daniel*, 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979)).