Dean B. CARLSON, Appellant,

v.

Otis R. BOWEN, Secretary of Health
and Human Services, Appellee.

No. 86–5334.

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1987.
Decided Oct. 27, 1987.

Hubert V. Forcier, Minneapolis, Minn., for appellant.

Michael C. Messer, Chicago, Ill., for appellee.

Before ROSS,* Circuit Judge,
HENLEY, Senior Circuit Judge, and
JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Dean B. Carlson appeals the judgment of the district court [1] affirming the Secretary of Health and Human Services' reduction of Carlson's 1981 and 1982 social security retirement benefits. Carlson was self-employed as a consultant in December, 1981, but was paid for the work in 1982. He was denied benefits for December, 1981 because the applicable statutes focused on whether he had performed substantial service that month, and his benefits for 1982 were reduced in the amount of $894.60, as the regulations focused on when earnings were received for federal income tax pur-

---

* The Honorable Donald R. Ross, an active Judge of this court at the time this case was submitted, took senior status on June 13, 1987.

1. The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

poses. Carlson argues that the 1982 reduction was a double deduction that was contrary to Congress' intent and the due process clause of the fifth amendment. The district court concluded that 20 C.F.R. § 404.428(b) (1982), the regulation mandating the reduction made in 1982, was neither contrary to Congressional intent, nor constitutionally infirm. We affirm the district court's judgment.

Carlson applied for social security retirement benefits to begin in June, 1981 based on a retirement date of May, 1981. He retired in May as planned, but worked 104 hours in December, 1981 as a self-employed consultant. However, he was not paid for his December, 1981 work until 1982, when he received $4200 for that work. In 1982 he received a total of $8053 from self-employment and wages, including both the money received for the December, 1981 work and for work he performed in 1982. Carlson was a cash basis taxpayer.

The Secretary concluded that Carlson had performed substantial services in self-employment in December, 1981 and had earned enough in 1981 (including pre-retirement earnings) so that excess earnings deductions entirely consumed the amount of benefits due him. The Secretary therefore denied Carlson retirement benefits for the month of December, 1981. Then, when the Secretary later discovered from Carlson's 1982 earnings report that Carlson had received payments from wages and self-employment greater than the exempted amount of earnings allowed Carlson for 1982, the Secretary notified Carlson that he had been overpaid $930.62 for 1982. Carlson requested a hearing, at which he argued that the 1982 earnings amount cited by the Secretary included the money actually earned from self-employment in December, 1981, but not received until 1982, and that Carlson had already forfeited his December, 1981 benefits because of that self-employment activity. Consequently, Carlson argued, he should not lose benefits a second time due to the same activity that had already caused him to lose a month's benefits. The administrative law judge determined that applicable regulations required that Carlson's 1982 benefits must be reduced because of 1982 income over the exempt amount, and that Carlson had been overpaid $894.60. The Appeals Council approved the administrative law judge's decision, which became the Secretary's decision.

Carlson then brought this action in the United States District Court, claiming that the 1982 deduction was contrary to Congress' intent in enacting the Old–Age, Survivors and Disability Insurance provisions of the Social Security Act, 42 U.S.C. §§ 401 et seq. (1982) (current version at 42 U.S.C.A. §§ 401 et seq. (West 1983 and 1987 Cum.Supp.)), and that the deduction violated his due process rights.

The case was referred to a magistrate, who concluded that Carlson had been "the victim of an unintentional consequence of strict application of the Social Security Act and Regulations" and that a liberal construction of the Act would forbid the reduction of Carlson's benefits in both December, 1981 and 1982 for the same self-employment activity.

The district court rejected the magistrate's recommendation, holding that the challenged regulation was not contrary to the language of the statute or to Congress' intent in enacting the statute and that more than an anomaly in a particular case is required to invalidate a rational regulatory scheme.

On appeal, Carlson makes essentially the same arguments he made in the district court—that 20 C.F.R. § 404.428(b), the regulation mandating the deduction in 1982, is contrary to Congress' intent in enacting the relevant provisions of the Social Security Act and is contrary to the requirements of the due process clause.

Under the Social Security Act, payments of retirement insurance benefits to a person who is still working may be reduced pursuant to either of two rules. *See generally* 42 U.S.C. § 403 (1982) (current version at 42 U.S.C.A. § 403 (West 1983 and 1987 Cum.Supp.)). The first (and generally applicable) rule is known as the "annual earnings" test. Under the "annual earnings" test, the beneficiary's aggregate earnings

for the year from wages and self-employment income are compared with a prescribed "exempt amount" for the year. 42 U.S.C. § 403(f)(3); 20 C.F.R. § 404.415 (1982).[2] If the insured has earned more than his exempt amount, then the difference will be divided by half to arrive at the beneficiary's "excess earnings for [the] taxable year." 42 U.S.C. § 403(f)(3); 20 C.F.R. § 404.430 (1982). Under section 403(b)[3] the Secretary of Health and Human Services makes deductions on the basis of the "excess earnings" from the benefits payable to the beneficiary. *See* 20 C.F.R. §§ 404.416, 404.434 (1982). In administering the statute, the Secretary adopted 20 C.F.R. § 404.428(b), which provides: "Net earnings from self-employment, or net losses therefrom, are derived, or incurred, and are includable as earnings or losses, in the year for which such earnings or losses are reportable for Federal income tax purposes."

The second test for reducing the amount of benefits due to work income is the monthly earnings test. This test functions as an exception, applicable only in the first year of retirement, to the annual earnings test to enable an insured to retire in midyear. A beneficiary who works part of a year before retiring is likely to have earned more than the annual exempt amount before retiring, so that his insurance benefits for the part of the year in which he is retired would be reduced or eliminated under the annual earnings test.[4] The monthly earnings test provides that, despite the results under the annual earnings test, for the remainder of the first taxable year after the beginning of entitlement to benefits (the "grace year") the beneficiary's benefits will not be reduced for any month in which the beneficiary did not engage in self-employment or work for wages of

more than the monthly exempt amount. 42 U.S.C. § 403(f)(1)(E); 20 C.F.R. § 404.435 (1982). The Secretary determines whether a person has engaged in self-employment by ascertaining whether he has rendered "substantial services" in a trade or business as an owner or partner in the relevant month. *Id.* § (d). If a beneficiary has rendered substantial services he will be deemed to have engaged in self-employment in the month whether or not he collected any income that month from his activities. *Id.* If the insured works in self-employment or for wages of more than the monthly exempt amount in a month during his grace year, then he loses the benefit of the monthly earnings exception and his benefits for that month will be reduced or eliminated according to the annual earnings test. 42 U.S.C. § 403(f)(1)(E).

Thus, when Carlson worked more than forty-five hours as a self-employed consultant in December, 1981, even though he was not paid that month, the applicable regulation, 20 C.F.R. § 404.447(a)(1), compelled the Secretary to find that he had performed substantial services in self-employment and had thus exceeded the allowed activity under the monthly earnings test. Once the Secretary determined Carlson had rendered substantial service in December, Carlson lost the benefit of the monthly earnings exception of Section 403(f)(1)(E) for December. The Secretary then tested Carlson's earnings for the entire year under the annual earnings test. Since Carlson had already earned far more than the exempt amount for the year by the time he retired, his December benefit was entirely eliminated under the annual earnings test. Carlson does not contest this ruling.

> shall be made from any payment or payments under this subchapter to which an individual is entitled, and from any payment or payments to which any other persons are entitled on the basis of such individual's wages and self-employment income....

**2.** 42 U.S.C. § 403(f)(3) provides in relevant part: [A]n individual's excess earnings for a taxable year shall be 50 per centum of his earnings for such year in excess of the product of the applicable exempt amount as determined under paragraph (8), multiplied by the number of months in such year....

**3.** 42 U.S.C. § 403(b) provides in relevant part: Deductions, in such amounts and at such time or times as the Secretary shall determine,

**4.** Carlson, who earned $45,124 in 1981, would have had his benefits eliminated for the year under the annual earnings test.

Then, when Carlson received $4,200 for the December, 1981 work in the 1982 taxable year and reported the earnings as income taxable in 1982, the result was inclusion of the $4,200 in earnings for the purpose of applying the annual earnings test in 1982. 20 C.F.R. § 404.428(b). Accordingly, Carlson had $1,026 in excess earnings for 1982 and was charged with an overpayment of $894.60 (after adjustments for unrelated matters, including a retroactive benefit increase).

Carlson makes three statutory arguments to show that 20 C.F.R. § 404.428(b), the regulation causing the payments for 1981 work to be included in 1982 annual earnings, is contrary to congressional intent. Carlson does not argue that the regulation is inconsistent with any actual provision of the Social Security Act, but that the regulation's application poses a problem Congress did not foresee. If Congress had foreseen the problem, Carlson argues that it would have acted to avoid the result reached in his case. Each of his three arguments is based on the legislative history of amendments to the Social Security Act.

 None of Carlson's legislative history arguments reveals a particular intent of Congress governing Carlson's case or indicating that 20 C.F.R. § 404.428(b) is inconsistent with any congressional purpose. All that is required of a regulation is that it be a reasonable interpretation of the statute the agency is charged with administering. *American Paper Institute, Inc. v. American Electric Power Service Corp.*, 461 U.S. 402, 423, 103 S.Ct. 1921, 1933, 76 L.Ed.2d 22 (1983). The provision of 20 C.F.R. § 404.428(b) Carlson challenges provides that self-employment income is includable as earnings for purposes of determining his excess earnings under section 403 in the same year it is includable for federal income tax purposes. 42 U.S.C. § 405(a) (1982) authorizes the Secretary to make regulations "not inconsistent with the provisions [of the Old–Age, Survivors and Disability Insurance provisions of the Act] which are necessary or appropriate to carry out such provisions." The Social Se-

curity Act defines "excess earnings" in terms of the retiree's earnings for a taxable year and provides that such earnings shall be charged against benefits for the months in "such taxable year." §§ 403(f)(1) and (3). Congress' cross-reference to tax law timing in determining the effect of self-employment earnings on benefits, as well as in dictating the beneficiary's obligations to report earnings to the Secretary, § 403(h), suggests that Congress contemplated an accounting system under the Social Security Act based on the system developed under the Internal Revenue Code. Moreover, it is eminently reasonable from an administrative point of view for the Secretary to use an accounting system already existing and familiar, instead of inventing a system peculiar to the Social Security system. 20 C.F.R. § 404.-428(b) is an entirely reasonable interpretation of sections 403 and 405(a).

Carlson's first statutory argument is that application of section 404.428(b) contradicts the intent expressed by Congress in enacting the Social Security Amendments of 1972, Pub.L. No. 92–603, 86 Stat. 1329 (1972). Prior to the 1972 amendments, the Social Security Act provided for a deduction of one dollar from retirement insurance benefits for each dollar the beneficiary earned over a threshold exempt amount. 42 U.S.C. §§ 403(f)(1) and (3) (1970). In 1972, Congress replaced the dollar for dollar reduction with a provision reducing benefits by one dollar for each two dollars earned over the exempt amount. Pub.L. No. 92–603, § 105(a)(3), 86 Stat. 1329, 1341 (1972). The House Ways and Means Committee reported that "[t]his change would assure that the more a beneficiary works and earns, the more spendable income (that is, social security benefits plus earnings after taxes) he will have." H.R.Rep. No. 231, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad. News 4989, 5036. Carlson argues that by allowing the Secretary to reduce 1981 and 1982 benefits because of the same self-employment activity, the regulation defeats Congress' design to give a beneficiary incentive to work and earn money over his exempt amount.

This court recently considered a similar argument in *Linquist v. Bowen*, 813 F.2d 884, 888–90 (8th Cir.1987). In that case, Linquist received retirement benefits under both the Social Security Act and the Railroad Retirement Act. Each Act provided that a beneficiary's benefits would be reduced by fifty percent of his earnings over the applicable exempt amount. 42 U.S.C. § 403(f)(3) and 45 U.S.C. § 231a(g)(2) (1982). Consequently, both the Railroad Retirement Board and the Social Security Administration reduced Linquist's benefits by half of her earnings over the excess amount. The result was that Linquist lost one dollar of benefits for each dollar she earned over the exempt amount. This court held that to allow this hundred percent reduction of benefits frustrated Congress' "clearly articulated purpose ... to encourage retired persons to work" by enacting the Social Security Amendments of 1972. 813 F.2d at 889. Therefore, the *Linquist* court ordered the Social Security Administration and the Railroad Retirement Board to coordinate their application of the excess earnings deduction so that together they would not recoup more than a total of fifty percent of Linquist's earnings over the exempt amount.

Despite the warning we must take from *Linquist* not to apply section 403 to frustrate the purpose of encouraging retired persons to work, that purpose is not threatened in the same way in this case as in *Linquist*. *Linquist* involved an ongoing situation, which would continue to reduce Mrs. Linquist's benefits so dramatically that she would be permanently discouraged from ever earning more than the exempt amount of income. On the other hand, Carlson's complaint concerns the interaction of administrative rules for the grace year and one subsequent year, and is, by its nature, a problem affecting benefits only for a short time. No permanent threat to Carlson's work incentive is presented by the isolated problem in issue here. In this case, we believe that the administrative convenience of permitting the Secretary to apply rational administrative rules uniformly may reasonably be thought to outweigh the danger of temporarily decreasing Carlson's work incentive, and we cannot conclude that application of the accounting regulation frustrates Congress' intent in enacting the 1972 amendment.

Carlson's second statutory argument is that 20 C.F.R. § 404.428(b) frustrates Congress' intent to achieve equity by revising the Social Security Act in 1977. Before the 1977 amendment, the monthly earnings exception to the annual earnings test applied for all years, with the result that a beneficiary who was able to concentrate his earnings in a few months of the year could avail himself of the monthly earnings exception and receive unreduced earnings for months in which he did not work, though he would have forfeited those benefits under the annual earnings test. The House Ways and Means Committee was concerned about the disparity in treatment between beneficiaries who were able to concentrate their earnings in one part of the year to take advantage of the monthly earnings exception and beneficiaries who worked regularly throughout the year, so that they were never able to take advantage of the exception. H.R.Rep. No. 702, 95th Cong., 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Ad.News 4155, 4207.[5] Congress corrected the inequity by eliminating the monthly earnings exception to the annual earnings test—except in the initial year of retirement (the grace year), when the monthly earnings exception is necessary to prevent pre-retirement earnings from reducing a new retiree's benefits for months when he did not work. Social Security Amendments of 1977, Pub.L. No. 95–216, § 303(a), 91 Stat. 1509, 1531 (1977).

Carlson's argument is that the 1977 amendment was enacted to avoid "precisely the kind of inequity" that results from application of 20 C.F.R. § 404.428(b) in his

---

**5.** The ALJ and district court observed that self-employed persons were more likely to be able to concentrate their earnings in certain periods, so as to minimize reduction of their benefits, as opposed to employed persons who had no such control over the method in which they were paid.

case. However, it is obvious that the 1977 amendment has no specific application to his case. The fact that Congress intended to achieve equity by enacting the 1977 amendment does not authorize this court to invalidate regulations with no more specific goal than that of doing equity in other situations Congress did not address.

Carlson's third statutory argument is similar to the second in that he argues that 1980 amendments that are not applicable to his own case should persuade the court that Congress would have wanted to do "equity" in Carlson's case. In 1980 Congress again amended the Social Security retirement test provisions. The 1980 amendments provided that earnings attributable to pre-retirement work, but received after the grace year, would not reduce the beneficiary's retirement benefits. Pub.L. No. 96–473, § 3a, 94 Stat. 2263, 2264 (1980) (codified at 42 U.S.C. § 403(f)(5)(D)(ii)). The purpose of the amendment was to avoid the problems caused by the 1977 elimination of the monthly earnings test after the grace year. Congress found that many retirees who had earned money prior to retirement and collected their earnings after retirement were docked for the earnings, even though they were truly retired. S.Rep. No. 987, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Ad. News 4787, 4790–91. The amendment corrected this inequity.

Again, the 1980 amendment is not literally applicable to Carlson's case, since the amendment governs pre-retirement earnings and Carlson's earnings were post-retirement. Again, the fact that Congress once adjusted the Social Security Act to make it more equitable in unrelated situations does not give this court license to invalidate regulations on the basis of the court's general conceptions of "equity". Rather, the claim of inequity appropriately should be addressed to the Congress.

In addition to his arguments that 20 C.F.R. § 404.428(b) frustrates Congressional intent, Carlson also argues that it violates his rights under the due process clause of the fifth amendment. Social welfare laws conferring governmental benefits are accorded considerable deference and will not be held to violate due process unless manifesting "a patently arbitrary classification, utterly lacking in rational justification." *Bowen v. Owens,* 476 U.S. 340, 106 S.Ct. 1881, 1885, 90 L.Ed.2d 316 (1986) (quoting *Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960)).

Carlson has shown no irrationality in 20 C.F.R. § 404.428(b). Obviously, the requirement that earnings be matched against benefits requires adoption of some accounting system to correlate the timing for recognition of such earnings and benefits. The Secretary's adoption of the accounting system used under the tax laws is altogether reasonable, and the system itself is rational. That an otherwise rational regulatory system operates imperfectly in a particular case does not render the operation of the system unconstitutional. *Idaho Department of Employment v. Smith,* 434 U.S. 100, 101–02, 98 S.Ct. 327, 328, 54 L.Ed.2d 324 (1977) (per curiam) (fourteenth amendment equal protection analysis, applying rationality test). Section 404.428(b), as applied by the Secretary, does not violate Carlson's due process rights.

The judgment of the district court is affirmed.