850 F.2d 692
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert L. GIBSON, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 87-3815.
 United States Court of Appeals, Sixth Circuit.
 July 5, 1988.
 
 Before WELLFORD and ALAN E. NORRIS, Circuit Judges, and R. ALLAN EDGAR*, District Judge.
 PER CURIAM.
 
 
 1
 In this controversy involving recoupment of overpayment, appellant, Robert L. Gibson, seeks a declaratory judgment that the Social Security Administration ("SSA") must use "net" rather than "gross" earnings in determining whether there have been overpayments of retirement benefits. Gibson's earnings had previously exceeded the allowable annual amount. The dispute relates to the method used to determine the overpayment.
 
 
 2
 Gibson retired from the Goodyear Aerospace Company in 1983, and elected to receive early social security retirement benefits at the age of 62. Following commencement of his benefits, Gibson continued to work part-time as a waiter at the University Club of Akron and also as the Clerk of Court for the Village of Lakemore. Gibson earned $7,811.00 as the result of his part-time work during 1984. FICA contributions were deducted from Gibson's earnings by his employers, and also income taxes. His "net" earnings were only in the amount of $6,284.72 after taking into account these FICA and income tax deductions.
 
 
 3
 Pursuant to its regulations promulgated pursuant to 42 U.S.C. Sec. 403 et seq., the SSA calculated Gibson's excess earnings for 1984 as follows: $7,811, the amount of his gross wages, less the maximum allowable yearly amount, $5,160, divided by one-half, or $1,325.
 
 
 4
 In May, 1985, Gibson applied for a waiver of the overpayment, disputing the amount owed because he felt that the SSA's method of computation of the overpayment based upon total wages earned rather than his "net" earnings constituted "double taxation." SSA denied Gibson's request for waiver of recovery of the overpayment which it had calculated. Gibson then requested a personal conference, which was conducted, and thereafter the initial decision requiring payment was affirmed administratively. Gibson then requested a hearing, asserting that the determination on overpayment was incorrect, but even if correct, he was without fault.
 
 
 5
 Following a hearing held on February 24, 1986, the Administrative Law Judge (ALJ) found that the amount of overpayment and the denial of waiver were correct after conducting a careful analysis of the applicable law and regulations and the evidence adduced. He concluded that the SSA had appropriately utilized Gibson's total wages to determine the amount of overpayment, and that Gibson was not without fault in causing the overpayment. Gibson's request for review of the ALJ's decision by the Appeals Council was denied, and the ALJ's decision therefore became the final decision of the Secretary. After Gibson filed suit in district court, the summary judgment matter was referred to the magistrate, who affirmed the decision in favor of the Secretary. He found the ALJ's decision to be supported by substantial evidence and in accordance with correct legal criteria, discussing Gibson's fault fully and considering also Gibson's amount of overpayment based upon gross wages rather than "net" earnings. The magistrate granted the Secretary's motion for summary judgment.
 
 
 6
 Gibson appealed, but does not challenge the magistrate's finding that substantial evidence supported the ALJ's determination that he was at fault in causing the overpayment, conceding that he must reimburse the SSA for an overpayment. He challenges, however, the recoupment of excess earnings based upon his gross wages because he claims that the Social Security Trust Fund and the Internal Revenue Service are already receiving a portion of this amount through the payroll deductions made. He asserts that he is being subjected to "double taxation" or "double recoupment." We affirm the decision for the Secretary.
 
 
 7
 42 U.S.C. Sec. 403(b) authorizes the Secretary to make "[d]eductions, in such amounts and at such time or times as the Secretary shall determine ... from any payment or payments to which an individual is entitled ... on the basis of such individual's wages and self-employment income...." Under the "annual earnings" test,[1] the beneficiary's aggregate earnings for the year from wages and self-employment income are compared with a prescribed exempt amount for the year. 42 U.S.C. Sec. 403(f)(3); 20 C.F.R. Sec. 404.415. 42 U.S.C. Sec. 403(f)(5)(A) defines "[a]n individual's earnings for a taxable year" as "(i) the sum of his wages for services rendered in such year and his net earnings from self-employment for such year, minus (ii) any net loss from self-employment for such year." The exempt amount for beneficiaries under age 65 is determined by a formula, which amount, in 1984, was $5,160.00. 48 Fed.Reg. 50414-01 (1983). If the insured has earned more than his exempt amount, then the difference between the exempt amount and his earnings will be divided by half to arrive at his "excess earnings for [the] taxable year." 42 U.S.C. Sec. 403(f)(3); 20 C.F.R. Sec. 404.430.
 
 
 8
 42 U.S.C. Sec. 403(f)(5)(A) contemplates a distinction between "wages" and "net earnings." This distinction is also apparent in 42 U.S.C. Sec. 409, which defines wages generally as "remuneration from employment" with a number of exceptions, none of which are applicable here.[2]
 
 
 9
 The regulations promulgated by the SSA to administer the statute also reflect the distinction between wages and net earnings from self-employment. 20 C.F.R. Sec. 404.428(a)(1) provides:
 
 
 10
 In applying the annual earnings test ... under this subpart, all of a beneficiary's earnings (as defined in Sec. 404.429) for all months of the beneficiary's taxable year are used even though the individual may not be entitled to benefits during all months of the taxable year.
 
 
 11
 (Emphasis added). 20 C.F.R. Sec. 404.429(a) provides:
 
 
 12
 When the term "earnings" is used in this subpart other than as a part of the phrase "net earnings from self-employment," it means an individual's earnings for a taxable year after 1954. It includes the sum of his wages for services rendered in such year, and his net earnings from self-employment for the taxable year, minus any net loss from self-employment for the same taxable year.
 
 
 13
 (Emphasis added). 20 C.F.R. Sec. 404.429(c), the critical provision, defines wages as "the gross amount of an individual's wages rather than the net amount paid after deductions by the employer for items such as taxes and insurance. (emphasis added). 20 C.F.R. Sec. 404.430 states that, for years ending after 1972, "an individual's excess earnings for a taxable year are 50 percent of his or her earnings (as described in Sec. 404.429) for the year" which are in excess of the exempt amount.
 
 
 14
 Gibson argues that "when a recipient of excess earnings repays the administration one dollar for each two earned notwithstanding any previous payment of Social Security taxes or income taxes," the SSA is collecting a double recovery (appellant's brief at 7), which he argues is adverse to the meaning of the Social Security Act, contrary to the Internal Revenue Code, if read in conjunction with the Social Security Act, and against equity and good conscience. He says the Social Security Act should be construed liberally in his favor.
 
 
 15
 The appropriate inquiry with regard to the validity of the Secretary's regulations, specifically Sec. 404.429(c), is whether they are a reasonable interpretation of the statute the agency is charged with administering. American Paper Institute, Inc. v. American Electric Power Service Corp., 461 U.S. 402, 423 (1983). 42 U.S.C. Secs. 403 and 409, as previously discussed, clearly indicate that Congress intended for wages for purposes of determining excess earnings to be any remuneration from employment with only certain specified exceptions not applicable here. Further support for the Secretary's definition of wages as gross wages for purposes of determining excess earnings is found in Congress's distinction between wages and net earnings from self-employment. Gibson was not self-employed during the pertinent period. The Secretary's regulatory scheme therefore comports with both the statutory language and Congress's apparent intent. It is not inconsistent with the Internal Revenue Code.
 
 
 16
 Finally, Gibson contends that the "double recovery" imposed upon him by the SSA violates equity and good conscience. As the Secretary notes, Congress in 1972 amended the excess earnings provision to change the deduction from a $1 deduction from benefits for each $1 of excess earnings to a $1 deduction from benefits for every $2 of excess earnings to "assure that the more a beneficiary works and earns, the more spendable income (that is, social security benefits plus earnings after taxes) he will have." H.R.Rep. No. 231, 92d Cong., 2d Sess., reprinted in 1972 U.S. Code Cong. & Ad. News 4989, 5036. There is no indication that Gibson's incentive to work was dampened by his payment of taxes and FICA contributions and his repayment of excess earnings all based upon gross wages.
 
 
 17
 We therefore AFFIRM the decision for the Secretary.
 
 
 
 *
 The HONORABLE R. ALLAN EDGAR, United States District Court for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 The "annual earnings" test is applicable in the present case for 1984. In 1983, when Gibson first began to receive retirement benefits, his monthly earnings after his retirement would be compared only to a monthly exempt amount to determine excess earnings. This "monthly earnings" test is utilized during a retirant's first year or "grace" year to allow him to work part of the year full-time before retiring. It is therefore an exception to the "annual earnings" test, which might reduce or eliminate benefits for a beneficiary who works full-time part of the year before retiring, and who is thus likely to have earned more than the annual exempt amount before retiring. 42 U.S.C. 403(f)(1)(E); 20 C.F.R. Sec. 404.435; Carlson v. Bowen, Secretary of Health and Human Services, 831 F.2d 814, 816 (8th Cir.1987)
 
 
 [2]
 Section 409 excepts from the definition of wages FICA contributions made by an employer without deduction from the remuneration paid to a domestic employee or agricultural laborer, indicating that otherwise Congress intended for wages to include deducted FICA contributions. 42 U.S.C. Sec. 409(f)(1). Section 409 also excepts from wages certain specific exclusions from gross income under the Internal Revenue Code not here applicable