# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2001

_____

| | | |
|---|---|---|
| Max M. Mason, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Jo Anne B. Barnhart, | * | |
| Commissioner of Social Security, | * | [PUBLISHED] |
| | * | |
| Appellee. | * | |

_____

Submitted: January 13, 2005
Filed: May 5, 2005

_____

Before LOKEN, Chief Judge, HANSEN and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

HANSEN, Circuit Judge.

The Social Security Administration (SSA) issued a notice of overpayment of benefits to Max M. Mason concerning social security retirement benefits that he received in 1997. Mason appeals the district court's[1] grant of summary judgment to the Commissioner upholding the SSA's determination, and we affirm.

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

I.

Mason owned and operated a real estate development company called Asset Management & Service Corp. ("the company"), which elected to be treated as a "small business corporation," or an S corporation, under relevant federal tax laws. See 26 U.S.C. § 1362(a), I.R.C. § 1362(a) (2000). In 1991, Mason sold one-third of his interest in the company to his son and one-third of his interest to his daughter, retaining a one-third interest in the company. He entered into a consulting agreement with the company in 1990, under which he was to receive $100,000 upon signing the agreement and $5,000 per month through December 31, 1996. The agreement and the consulting fee were extended through 2000. Mason did not receive payment under the contract, but in 1997 he reported $264,398 as Schedule C income on his individual Form 1040 income tax return pursuant to a Form 1099 issued to him by the company. The company, an accrual-basis taxpayer, experienced $283,000 of earned but uncollected income in 1997 and sought to minimize the tax effect of that income on its shareholders by deducting the $264,398 consulting fees paid to Mr. Mason against the same period's income. Mason admitted making the conscious decision to handle the consulting fees in this manner as he was the "only one" able to obtain the funds necessary to pay any applicable taxes.[2] The company did not pay Mason the $264,398 but issued him a "promise" to pay it when the company sold some developing lots that it anticipated would be sold a few years down the road. Mason borrowed over $20,000 to pay the resulting income and self-employment taxes computed on his 1997 tax return.

---

[2]As an S corporation, the company does not pay taxes on its net income but passes the net income through to its shareholders on a pro rata basis. See I.R.C. §§ 1363(a), 1366(a). In effect, Mason took the full brunt of the income earned by the company, alleviating his children, as shareholders, from reporting their share of the income and paying taxes on income they did not receive.

Mason turned 62 in 1992 and began receiving social security retirement benefits at that time. The SSA issued a notice in 1999 advising Mason that it had overpaid his benefits in 1997 by nearly $10,000 because the self-employment earnings reported on his 1997 Form 1040 reduced his social security benefits to $0 for the year. Mason sought a hearing before an administrative law judge (ALJ), where he argued that he had "prepaid" the income taxes on the reported income, which he had yet to receive. As a cash basis taxpayer, he argued that the reported income was not earnings that could be used to reduce his social security benefits under the social security regulations. The ALJ upheld the SSA's determination. The Appeals Council denied Mason's request for review, and he brought suit in district court, seeking review of the Commissioner's final decision. The district court granted summary judgment to the Commissioner, and Mason appeals.

II.

We review de novo the district court's grant of summary judgment, applying the same standards applied by the district court. See Reeder v. Apfel, 214 F.3d 984, 986-87 (8th Cir. 2000). The Social Security Act provides for judicial review of final decisions of the Commissioner, which is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision, and whether the Commissioner correctly applied the relevant legal standards. See 42 U.S.C. § 405(g) (2000); Berger v. Apfel, 200 F.3d 1157, 1161 (8th Cir. 2000).

The Social Security Act permits a retired person to engage in some work activity without losing social security retirement benefits. See 42 U.S.C. § 403(b), (f) (2000). Once the individual's earnings exceed the applicable exempt amount, which was $13,500 in 1997, see 64 Fed. Reg. 57506, 57509 (Oct. 25, 1999), social security benefits are reduced one dollar for each three dollars earned above the exempt amount. See § 403(b),(f); 20 C.F.R. §§ 404.415(a), 404.430. The issue in this case is whether the self-employment earnings reported on Mason's 1997 Form

1040, for which he received no cash in 1997, are earnings for purposes of determining whether Mason had excess earnings that would reduce his social security retirement benefits.

The social security regulations define "earnings" as "an individual's earnings for a taxable year," which include both "wages" and "net earnings from self-employment." 20 C.F.R. § 404.429(a). Net earnings from self-employment are determined under subpart K of the social security regulations (20 C.F.R. §§ 404.1001-404.1096). See § 404.429(b). In explaining "earnings in a taxable year," the regulations provide that "[n]et earnings from self-employment . . . are derived, or incurred, and are includable as earnings . . . in the year for which such earnings . . . are reportable for Federal income tax purposes." § 404.428(b). See also 20 C.F.R. § 404.1080(d)(3) ("Your taxable year for figuring self-employment income is the same as your taxable year for the purposes of subtitle A of the [Internal Revenue] Code."). The Social Security Act and the Internal Revenue Code are to be construed similarly, as one determines on what earnings an individual will receive credit for benefit purposes, and the other determines on what earnings an individual must pay social security tax. See 20 C.F.R. § 404.1001(c). Thus, we must determine whether Mason's 1099 income was "reportable" for income tax purposes in 1997 to determine whether it was properly included as excess earnings for social security purposes.

Mason argues that as a cash basis taxpayer, the 1099 income was not reportable until he received it, even though he actually reported it on his 1997 return, relying on 20 C.F.R. § 404.1080(c) (defining "net earnings from self-employment" by providing that "[y]our gross income from a trade or business includes gross income you received (under the cash basis method) or that accrued to you (under the accrual method) from the trade or business in the taxable year."). The Tax Code is not as simple as Mason would have it. Many interrelated provisions are involved. The Code requires a business that pays remuneration to any person for services performed during the calendar year to file an information return, a Form 1099, reporting the

recipient's name and address and the amount of the payment. I.R.C. § 6041A(a). If the business is related to the person performing the services, the business cannot deduct the payment on its corporate tax return as a business expense unless the recipient includes the payment as income on his individual tax return in the same year. See I.R.C. § 267(a)(2).[3] Receipt of a Form 1099 does not conclusively establish that the recipient has reportable income. If a recipient of a Form 1099 has a reasonable dispute with the amount reported on a Form 1099, the Code places the burden on the Secretary of the Treasury to produce reasonable and probative information, in addition to the Form 1099, before payments reported on a Form 1099 are attributed to the recipient. See I.R.C. § 6201(d).

Applying these tax provisions to the facts of this case, it is clear that Mason received reportable income in 1997. Asset Management & Service Corp. issued a Form 1099 to Mason reporting payments of $264,398. Mason did not invoke the procedures of I.R.C. § 6201(d) or otherwise dispute the amount reported. Rather, he reported the amount on his cash-basis Schedule C of his 1997 Form 1040 as earnings from self-employment and paid the corresponding income and self-employment taxes. Asset Management & Service Corp. deducted the reported payment as a consulting fee on its S Corporation tax return, greatly reducing the income subject to taxation that passed through to its shareholders. Mason made a conscious decision to treat the income as reportable (and so reported it) and now must accept all of the resulting consequences. See Bean v. Comm'r, 268 F.3d 553, 557 (8th Cir. 2001).

---

[3]Related taxpayers for purposes of § 267(a)(2) include an individual and a corporation if the individual owns, directly or indirectly, more than 50 percent of the outstanding stock of the corporation. § 267(b)(2). An individual is considered to constructively own the stock owned by his family, including his lineal descendants. § 267(c)(2), (4). Thus, Mason constructively owns 100% of the stock of Asset Management & Service Corp. because he directly owns one-third of the outstanding stock and his children own the other two-thirds of the outstanding stock.

Having established that the 1099 income was reportable for income tax purposes, we conclude that it was also earnings under the social security regulations and properly included in calculating Mason's excess earnings for social security purposes. See § 404.428(b); 20 C.F.R. § 404.1080(d)(3). Mason cannot have it both ways. Either the 1099 income was reportable for both income tax and social security purposes, or it was not. Having reported the income on his tax return, the income must be recognized as excess earnings for social security purposes. See Carlson v. Bowen, 831 F.2d 814, 817 (8th Cir. 1987) ("[W]hen Carlson . . . reported the earnings as income taxable in 1982, the result was inclusion of the $4,200 in earnings for the purpose of applying the annual earnings test in 1982." (citing 20 C.F.R. § 404.428(b)).

III.

The district court's judgment is affirmed.

_____