**UNITED STATES of America, Appellee,**

v.

**Chauncey Wesley LONG ELK, Appellant.**

No. 86–5132.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1986.

Decided Nov. 21, 1986.

Dale A. Wein, Aberdeen, S.D., for appellant.

Robert A. Mandel, Asst. U.S. Atty., Pierre, S.D., for appellee.

Before HEANEY and WOLLMAN, Circuit Judges, and DUMBAULD,* Senior District Judge.

WOLLMAN, Circuit Judge.

Defendant, Chauncey Wesley Long Elk, an American Indian, was convicted of involuntary manslaughter pursuant to 18 U.S.C.

---

* The HONORABLE EDWARD DUMBAULD, United States Senior District Judge for the Western District of Pennsylvania, sitting by designation.

§§ 1153 and 1112 and was sentenced to twenty-seven months' imprisonment.[1]

Defendant raises two points on appeal: (1) he could not commit the crime of reckless or careless driving under Title XI Section 106 of the Standing Rock Sioux Tribal Code of Justice inasmuch as the alleged conduct did not occur on a public highway or roadway; and (2) the evidence was insufficient to support the jury's verdict because the evidence failed to establish that he was driving the vehicle that allegedly caused the victim's death. We affirm.

On the morning of November 2, 1985, defendant drove his automobile from McLaughlin, South Dakota, to Little Eagle, South Dakota. Prior to leaving McLaughlin defendant drank from a half gallon container of wine that he had found in his car. Shortly after noon, defendant picked up Ms. Patty Red Legs in Little Eagle. By this time defendant was already intoxicated, so he asked Ms. Red Legs to drive for him. With defendant and Ms. Red Legs in the automobile were defendant's seven-year-old stepson, Sam Braithwaite; Gerald Yellow Earrings; and Albert Twiggs. The individuals spent the afternoon driving in and around Little Eagle, during which time the adults drank alcoholic beverages. At 4:14 p.m., Ms. Red Legs was arrested for driving the automobile without a license and for driving under the influence of intoxicating liquor or drugs.

Following Ms. Red Legs' arrest, defendant drove the vehicle to Alvin Yellow Earrings' residence, which was some two miles from Little Eagle and within Indian Country. Sam Braithwaite testified that when they drove up to the house, Alvin Yellow Earrings came out of the residence, slipped on the porch steps, and fell to the ground, where he remained. Defendant then struck the house with his vehicle. Defendant then drove the vehicle to the side of the house opposite where Mr. Yellow Earrings was lying, turned a circle in the yard, and then drove the vehicle around the house and eventually ended up on the same side of the house as the victim.

Shortly after 5:15 p.m., Emerson Yellow Earrings arrived home and discovered his father lying in the yard outside the residence. Alvin Yellow Earrings died sometime later that evening or during the early morning hours of November 3 of severe injuries to the chest consistent with his having been struck by an automobile.

Defendant, who by his own admission was extremely intoxicated on the day in question, claimed no recollection of the incident, but did recall waking up in the front seat of his car at 3:00 a.m. the next day in McLaughlin. Ms. Red Legs testified that she did not operate the vehicle at the victim's residence.

I.

Involuntary manslaughter is defined by 18 U.S.C. § 1112(a) as "the unlawful killing of a human being without malice * * * [i]n the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or without due caution and circumspection of a lawful act which might produce death." The wrongful act that defendant was alleged to have committed was a violation of § 11–106(a) of the Standing Rock Sioux Tribal Code of Justice (the Code), which provides:

> Any person who drives a vehicle carelessly or heedlessly in willful or wanton disregard of the rights or safety of others or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or the property of another is guilty of reckless driving.

Defendant contends that his conviction cannot be based upon § 11–106(a) inasmuch as that provision applies only to conduct occurring on a public highway or roadway. The parties do not dispute that defendant's alleged wrongful conduct did not occur on a highway or roadway. The point of dispute between the parties is how § 11–106(a) should be interpreted.

1. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota.

Before reviewing the language of the statute, we are reminded of several fundamental rules of statutory construction. "[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). If there is an ambiguity in a criminal statute, it is to be resolved in favor of lenity. *Liparota v. United States,* 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985). A particular section of a statute is not to be read in a vacuum, but should be considered in conjunction with the context within which it is found. *State Highway Comm'n of Mo. v. Volpe,* 479 F.2d 1099, 1111–12 (8th Cir. 1973). The title of an act, though, must not be used to limit the meaning of plain and ambiguous words in the text of the statute. *FTC v. Mandel Bros., Inc.,* 359 U.S. 385, 388–89, 79 S.Ct. 818, 821–22, 3 L.Ed.2d 893 (1959); *Weir v. United States,* 339 F.2d 82, 85 (8th Cir.1964).

Section 11–106(a), on its face, does not put a limitation on where the prohibited conduct must occur. From the wording of the provision, it would appear that the conduct could occur either on or off a public roadway or highway. Defendant, however, contends that the statute should be construed as requiring that the conduct take place on a public highway or roadway.

First, defendant argues that his interpretation is supported by the context of other sections in Title XI of the Code. He points out that a majority of provisions in Title XI apply only to conduct occurring on a public highway or roadway. Nevertheless, there are a number of provisions in Title XI that make no mention of where the conduct must occur. If § 11–106(a) was the only section of Title XI that did not mention where the proscribed conduct must take place, we would be more likely to view such an omission as mere inadvertence. Given the fact that there are a number of sections without this limitation, however, we believe that the drafters must have purposely excluded those limiting words from that paragraph.

Defendant also contends that interpreting § 11–106(a) to prohibit conduct occurring only on a public highway or roadway is the only way to make that paragraph consistent with other provisions of § 11–106, which read as follows:

(b) Any person who drives any vehicle upon a highway carelessly in disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to be likely to endanger any person or property shall be guilty of careless driving.

(c) Every person convicted of reckless or careless driving shall be punished by imprisonment for a period of not more than 30 days or to a fine not to exceed $100.00, or to both such imprisonment and fine, with costs, and may be deprived of the right to operate a motor vehicle for a period of not to exceed one year.

The essence of defendant's argument is that the Tribal Council intended to draw a distinction in §§ 11–106(a) and (b) only between the standard of care exercised by the driver, and not also between where the proscribed conduct must occur. More specifically, defendant states that the only way to make § 11–106 "internally consistent" is to make the standard of care the single distinguishing factor between an offense committed under § 11–106(a) and one committed under § 11–106(b).

We conclude, however, that § 11–106 can be read as internally consistent without reading additional words into the statute. The fact that the words "highway" or "roadway" were included in § 11–106(b), but not in § 11–106(a), can be explained by the fact that conduct in willful and wanton disregard of the rights or safety or others is more culpable than conduct merely in careless disregard of the rights or safety of others. It was logical for the Tribal Council to prohibit the more culpable conduct without regard to the location, while

at the same time forbidding less blameworthy conduct only in certain locations. Consequently, we see no need to alter the clear language of the statute.

Defendant further claims that the fact that Title XI of the Code is titled "Highways" is indicative of the Tribal Council's intent to limit the statute's application to conduct that occurs on tribal highways. We disagree. The title of a statute should be used to resolve ambiguities in a statute and not to create them. *See Weir*, 339 F.2d at 85. Because we find no ambiguity in either § 11–106(a) or in the text in which it appears, the title of this enactment should not be used to fashion one.

We recognize the settled principle that ambiguities in criminal statutes are to be resolved in favor of lenity. *See Liparota v. United States*, 471 U.S. at 427, 105 S.Ct. at 2089. This fundamental principle, though, is not violated in this instance. The rule of lenity is turned to when there is an ambiguity. *Id.* Since we find no ambiguity here, the rule of lenity is inapplicable.

We hold, therefore, that § 11–106(a) is applicable to defendant's conduct.

## II.

Defendant also claims that the evidence was insufficient to convict him of involuntary manslaughter because it was not established at trial that he was driving the vehicle when the victim's injuries were incurred.

In evaluating the sufficiency of the evidence, we are reminded that we must view the evidence in the light most favorable to the verdict, sustaining the verdict if supported by substantial evidence. *United States v. Casperson*, 773 F.2d 216, 221 (8th Cir.1985). The Government is to be given the benefit of all reasonable inferences that can be drawn from the evidence, and factual disputes are to be decided in favor of the Government. *United States v. Garcia*, 785 F.2d 214, 225 (8th Cir.) *cert. denied*, —— U.S. ——, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986). The evidence need not exclude all reasonable hypotheses except guilt, and the essential elements of the offense can be established by circumstantial evidence. *United States v. Nabors*, 762 F.2d 642, 653 (8th Cir.1985).

We find that the circumstantial evidence in this case supports the jury's verdict. The paint smears found on the victim's shirt matched the paint on defendant's automobile, as did the paint particles on the victim's house. Defendant and Ms. Red Legs were the only persons who drove defendant's vehicle on November 2. Sam Braithwaite's testimony established that it was defendant who drove the automobile to the victim's house that day only a short time before the victim's son found him injured. It can be inferred from Sam's testimony that defendant drove the vehicle recklessly in close proximity to the victim. Sam remembered the car hitting something in the yard; and although he stated at trial—with his stepfather in the courtroom—that he was not sure what had happened, he did remember telling the grand jury that defendant had hit the victim. The nature of the victim's death-causing injuries rules out the possibility that the injuries were suffered when the victim fell from the porch. Moreover, the short period that elapsed between the time defendant left the scene to the time when the victim was found by his son militates against the possibility that some subsequent intervening event caused the fatal injury. When viewed in its entirety, the evidence is sufficient to support the jury's finding that it was defendant who struck and killed the victim.

The judgment of conviction is affirmed.