UNITED STATES of America, Appellee,

v.

James William BROYLES, Appellant.

No. 93–2962.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1994.

Decided Oct. 13, 1994.

Rehearing Denied Dec. 8, 1994.

---

David Gallego, Troy, MO, argued, for appellant.

Patricia McGarry, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before BOWMAN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

BOWMAN, Circuit Judge.

James William Broyles was tried by jury and convicted of violating 18 U.S.C. § 2252(a)(2), concerning the sexual exploitation of minors. The District Court [1] imposed a sentence of twenty-one months, to be followed by two years of supervised release with participation in a program of mental and/or emotional treatment. Broyles does not challenge his sentence but appeals his conviction on several grounds. We affirm.

I.

In July 1992, U.S. Postal inspectors received a tip from a confidential informant ("Karin") who had received a letter from Broyles seeking sexually explicit material involving minors. "Karin" dealt in pornography involving adults and had offered "her" wares to Broyles. The offer prompted Broyles' letter, which includes the following statement: " '[I]f you had a somewhat more unique product, say younger girls (teenies) or perhaps some of the more esoteric forms of sexual variations perhaps we could do some business.' " Letter postmarked July 15, 1992, quoted in Trial Tr. at p. 8. This letter was forwarded to the St. Louis Division, which, after investigation, decided on a sting operation. Using the alias "Paula," Postal Inspector Becky Powers wrote to Broyles, using a post office box in Normal, Illinois as a front,[2] and stating that her friend, Karin, "said you might be interested in some products I have, specifically young girls. I do have magazines and videos dealing in such and if you are interested let me know what kind of action and age interests you.' " Trial Tr. at 35–36. In a response of August 9, 1992 Broyles noted that " 'I prefer something slightly more exotic.... In particular, young white females between the ages of 11 and 15, just developing and not totally developed. All this may be considered an abberation [sic] by society in general. I find it to be of interest to me. I realize that this may be beyond your abilities and it's definitely

1. The Honorable Edward L. Filippine, Chief Judge, United States District Court for the Eastern District of Missouri.

2. This irony was not lost on defendant, who noted in a postscript to a letter received by "Paula" on 2 September 1992: "Normal, Illinois, for such products, what delicious humor.' " Trial Tr. at 46.

flirting with the law...." Trial Tr. at 38. Broyles then went on to graphically list specific areas of interest. He further requested "explicit examples of your product" before being willing to tender his money. In response, "Paula" supplied a list and description of some videos, "Doctor of Love," "Adventure in Sex," and "Two on One," the last involving "two 12–year–old girls and an 11–year–old boy," Trial Tr. at 40–41, and offered them on a one-half in advance, one-half on receipt basis. Broyles responded with an order and a letter, which the prosecution had Powers read into the trial record as follows:

> "[W]hat you described sounds exquisite. Don't be put off by the original age range of 11 to 15, for if the females are well formed, 'cute,' and actively engaged, that range could be as low as 6 to 8 but no higher than 15. As I'm sure you realize, one must be extremely careful when dealing with this type of product and I didn't wish to seem too forward. I assume you read my areas of interest and once we establish a reliable ... business relationship and trust, more exotic interests covering more of the areas I indicated and using the expanded range will become available. I am hoping these videos are more than 10 minute 'wham, bam.' I expect at least 30 minutes each and hope for 60 minutes. While number 1 sounds interesting, I am choosing Number 3, " 'Two on One,' "—and

he writes in—" 'Your chance to shine.' "
Trial Tr. at 45. Inspector Powers prepared a videotape copied from previously seized child pornography and a controlled delivery was made to defendant's apartment in St. Louis. A search warrant was obtained and Postal Inspector Robert Stewart, along with other law enforcement officials, executed the warrant on the day of the controlled delivery. The videotape was recovered from a drop ceiling in Broyles' kitchen and the mailing packet and letters from "Paula" from elsewhere in the apartment. No other child pornography was recovered. After signing a Miranda warning and waiver, Broyles answered questions posed to him by Inspector Stewart.

Broyles was indicted on one count of knowingly receiving by mail a videotape containing visual depictions of persons under the age of eighteen years engaging in sexually explicit conduct, a violation of 18 U.S.C. § 2252(a)(2). His court-appointed counsel filed several pretrial discovery motions including one for production of grand jury transcripts or reports. The evidentiary hearing was held two days later before a Magistrate Judge,[3] who recommended, *inter alia*, that Broyles' motion for production of the grand jury transcripts or reports be denied. Defendant filed no objection to that recommendation, although he did file an objection to the recommendation that his motion to suppress be denied. The District Court adopted all the Magistrate Judge's recommendations and thus Broyles' motion for production of grand jury transcripts or reports was denied.

At trial, in addition to the testimony of Powers and Stewart and several other prosecution witnesses, the jury heard from Dr. James A. Monteleone, a pediatric endocrinologist who testified as an expert witness for the prosecution. The jury also was assisted by its viewing of a portion of the "Two on One" videotape. At the close of the government's case, Broyles moved for a judgment of acquittal. That motion was denied, Broyles presented no evidence, and the jury returned a verdict of guilty.

## II.

Broyles first argues that the District Court erred in denying his motion for a judgment of acquittal because the government failed to prove that the individuals in the video were in fact under the age of eighteen.[4] The Code

---

**3.** The Honorable Frederick R. Buckles, United States Magistrate Judge for the Eastern District of Missouri.

**4.** As the sole supporting authority for this argument, appellant cites *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), and sets forth quoted language that purportedly comes from that decision. We are surprised to find that *Sanabria* does not include the quotation offered by counsel, nor is it even a case dealing with child pornography. We would admonish counsel to be more careful in his citation of authority in the future.

section under which defendant was convicted, 18 U.S.C. § 2252(a)(2), applies to any individual who "knowingly receives, or distributes any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, ... if—(A) the providing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct...." For the purposes of this section, "minor" is defined as "any person under the age of eighteen years." 18 U.S.C. § 2256(1).

In *United States v. Freeman*, 808 F.2d 1290, 1293 (8th Cir.), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987), we noted that

> [p]rior to the 1984 amendments Congress defined minor as any person under the age of sixteen years. This definition, however, created enforcement problems because in many cases the child was not available to testify at trial as to his or her age at the time the photographs were taken. Consequently, unless the child had not yet entered puberty, and was therefore definitely under the age of sixteen, an offense could not be proved using the photographs or videotapes alone. *Raising the age to eighteen enables enforcement of the Act whenever the child depicted does not appear to be an adult.*

*Id.* at 1293 (emphasis added).

In reviewing the sufficiency of the evidence we must consider it "in the light most favorable to the jury verdict and accept all reasonable inferences from the evidence which tend to support the jury verdict." *United States v. Has No Horse*, 11 F.3d 104, 106–07 (8th Cir.1993). The evidence must " 'be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty.' " *United States v. Wajda*, 810 F.2d 754, 761 (8th Cir.), *cert. denied*, 481 U.S. 1040, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987); *see also Has No Horse*, 11 F.3d at 107 ("[t]he question we must answer is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

█ In the present case there was testimony on the record that the word "teenies," used in defendant's letter postmarked July 15, 1992, was a "tip word" used in child pornography circles for "minors." *See* Trial Tr. at 15, 18, 36, 63. It is also clear that defendant was seeking materials related to the prohibited age group. He writes on August 9, 1992 that " 'I prefer something slightly more exotic..... In particular young white females between the ages of 11 and 15, just developing and not totally developed,' " *id.* at 38, and ordered "Two on One," a film described as depicting two twelve-year-old girls and an eleven-year-old boy engaged in sexual acts. *Id.* at 40–41, 42, 45. His letter of September 2, 1992 adds, " '[D]on't be put off by the original age range of 11 to 15, for if the females are well formed, "cute," and actively engaged, that range could be as low as 6 to 8 but no higher than 15. As I'm sure you realize, we must be extremely careful when dealing with this type of product and I didn't wish to be too forward.' " *Id.* at 45. When confronted with a search warrant for child pornography and asked by Postal Inspector Stewart where the child pornography videotape was, "he pointed to a specific tile in his kitchen. He had a suspended ceiling and pointed to the tile, at which point we looked above the tile and the video cassette was found." *Id.* at 89. Finally the defendant stated "that he was aware that the cassette contained girls 13 and 15." *Id.* at 100.

Additionally, the testimony of several witnesses is supportive of the jury's conclusion covering the age of the minors who appeared in "Two on One." While Becky Powers, a Postal Inspector, testified that she had no personal knowledge of the age of the individuals appearing in the video, she also stated that she had "seen enough child pornography where I think I can give the approximate age of a child in a child pornography movie," *id.* at 67, and noted that she was "pretty familiar" with the development of children from three of her own and three stepchildren, *id.* at 76. In some of the related training she had received "they say what body features to look for ..., and that's what I try to look for in these movies." *Id.* at 76 (noting that she had personally reviewed the tape in question). Dr. Monteleone, a professor of pediatrics at St. Louis University School of Medicine with a specialty and board certification

in pediatric endocrinology and Director of the Child Protection Unit at Cardinal Glennon Children's Hospital, testified basing his conclusions on specific features he observed on the video. In his opinion, one of the girls and the boy definitely were under age eighteen, with an estimated age for the girl of from nine to fourteen years and of the boy, who was clearly in a pre-pubertal state, from eight to nine years. *See id.* at 120–23, 125.

Finally, parts of the videotape were viewed by the jury, which thus was in a position to draw its independent conclusions as to the age of the performers. The videotape itself, together with the other evidence described above, provides ample support for the verdict finding Broyles guilty.

Broyles attempts to blur this conclusion by complaining that the videotape was too "fuzzy" to permit anyone to determine that any of the performers were minors. This argument is meritless. Dr. Monteleone stated in cross-examination:

> ... I feel pretty comfortable with my diagnosis of those three children.
>
> Q. And that's even in light of the fact that sometimes it was blurred and they were moving?
>
> A. Yes.

*Id.* at 124.

We have reviewed enough of the videotape to be assured it provides an adequate basis for the testimony concerning the ages of the performers and for the jury's verdict of guilty, which indicates the jury was convinced that beyond a reasonable doubt at least one of the performers was a minor. *See United States v. O'Malley,* 854 F.2d 1085, 1087 (8th Cir.1988) ("[a] close scrutiny of the pictures at issue fully supports the district court findings that the photos depict persons as minors, who are in fact minors, engaged in reprobate conduct under the statute.").

### III.

Broyles' second argument is that the court erred in following the Magistrate Judge's report and recommendation that the defendant's motion for discovery of the grand jury transcripts and record be denied. Defendant argued that discovery was necessary to allow a showing that the grand jury considered improperly or illegally obtained evidence.

 The disclosure of grand jury minutes is covered by Rule 6(e)(3)(C)(ii) of the Federal Rules of Criminal Procedure. This states that disclosure otherwise prohibited by the rule may be made "when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." It is well-established that a showing of "particularized need" is necessary before the court will accede to such a release. *See United States v. Procter & Gamble,* 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958); *United States v. Sileven,* 985 F.2d 962, 965 (8th Cir.1993) (per curiam). The decision is left "to the sound discretion of the trial judge" and may only be reversed for an abuse of discretion. *In re Grand Jury Subpoenas Duces Tecum,* 904 F.2d 466, 468 (8th Cir. 1990).

 Broyles made no showing of particularized need in his pretrial motion, at trial, or on appeal. A long line of cases in this Circuit note that "a bare allegation that the records [of a grand jury] are necessary to determine if there may be a defect in the grand jury process does not satisfy the 'particularized need' requirement." *United States v. Warren,* 16 F.3d 247, 283 (8th Cir. 1994). We therefore hold that the District Court did not abuse its discretion in denying defendant's motion on the basis of his failure to show a "particularized need" for the requested grand jury materials.

### IV.

 A third inchoate argument is raised in Broyles' discussion of the court's failure to release grand jury transcripts. This is that the materials should have been made available during trial for the purpose of impeaching government witnesses and that the court erred in failing to grant the discovery of these transcripts during trial even though no specific motion was filed during trial requesting them. Federal Rule of Criminal Procedure 26.2(a) notes that

After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the government or the defendant and the defendant's attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning where the witness has testified.

*See also* 18 U.S.C. § 3500(b). The term "statement" includes "a statement, however taken or recorded, or a transcription thereof, made by the witness to a grand jury." Fed. R.Crim.P. 26.2(f)(3); *see also* 18 U.S.C. § 3500(e)(3). Defendant admits that no motion requesting this was filed at trial; but the rule is silent as to the timing of the motion's *filing*, as opposed to the court's order. Rule 26.2(b) states that: "If the entire contents of the statement relate to the subject matter concerning which the witness has testified, the court shall order that the statement be delivered to the moving party." Again this makes no mention of the time of the motion, and raises the question as to whether the court is under a duty to order the delivery of a statement on the basis of a pretrial motion.

The facts of this case are foursquare with those of *Hanger v. United States*, 398 F.2d 91 (8th Cir.1968), *cert. denied*, 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969). In *Hanger* there was a pretrial motion to allow inspection of the grand jury minutes, but no motion made on the subject after the testimony of hostile witnesses during trial; "the defendants forewent the opportunity ... embraced in the principle of § 3500 of Title 18, U.S.C. relating to statements, to make a proper request for the grand jury minutes, preferring to stand on their pretrial discovery requests." *Id.* at 96. In *Hanger* this Court held that

> [w]here production of grand jury minutes is sought on the basis that they are needed for impeachment purposes or to test the credibility of a witness it would seem to us that the proper time for such a motion is at the time the witness testifies at trial, upon a showing of particularized need for inspection. A proper and timely request

would make the minutes available for cross-examination to test the witness's credibility and for impeachment purposes. A timely request was not made here. This request should have been made during or after the direct examination of the witness.

*Id.* at 97–98 (citations omitted); *see also United States v. Harflinger*, 436 F.2d 928, 935 (8th Cir.1970), *cert. denied*, 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971) (holding that no timely request for grand jury transcripts had been made because defendant did not renew request during or after the direct examination of the witness). We therefore hold that Broyles' failure to renew his motion during trial was sufficient reason for the court to fail to grant access to potentially relevant grand jury transcripts.

## IV.

Having considered all of Broyles' arguments, we affirm the judgment of the District Court in all respects.