# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1982

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the District |
| | * | of South Dakota. |
| Tom Vig, | * | |
| Appellant. | * | |

_____

No. 98-2003

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Donovan Vig, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 20, 1998

Filed: February 2, 1999

_____

Before FAGG, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

BEAM, Circuit Judge.

Tom and Donovan Vig appeal their convictions, following a jury trial,[1] for violation of section 2252(a)(4)(B) of the Protection of Children Against Sexual Exploitation Act of 1977, as subsequently amended, which prohibits the knowing possession of three or more books, magazines, periodicals, films, video tapes, or other matter containing any visual depiction of a minor engaging in sexually explicit conduct.

On appeal, Tom Vig raises one issue and Donovan Vig raises three. First, both claim that the evidence was legally insufficient to support their convictions under 18 U.S.C. § 2252(a)(4)(B). Specifically, they argue that the district court erroneously interpreted the phrase "other matter" in section 2252(a)(4)(B) to include computer image files. In addition, Donovan Vig claims that: (1) the government failed to prove that the subjects of the visual depictions were actual children; and (2) the district court erred in denying his post-trial motion for either a new trial or an evidentiary hearing based on allegations of juror misconduct. For the reasons discussed below, we affirm.

## I.    BACKGROUND

We briefly state the background facts and procedural history, reserving more detailed statements for the portions of this opinion in which we discuss the specific issues raised by the defendants. On or about February 19, 1997, Tom Vig took his personal home computer to PC Doctor, a computer repair and service center, in Sioux Falls, South Dakota. Vig informed James Roby, service manager at PC Doctor, that the computer was not working properly because of something that had been downloaded off the Internet. While repairing the computer, Roby came across computer images of children engaged in various forms of sexual activity. He

_____

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, presiding.

immediately informed management of what he had seen. Management then contacted the United States Marshals office in Sioux Falls which, in turn, contacted the FBI.

A few days later, Matthew Miller, an FBI Special Agent met with Tom Vig concerning the allegation of child pornography on his computer. During the meeting, Tom Vig admitted to Miller that the computer was his and that he had seen and downloaded pictures of nude children out of curiosity. Miller requested and received Tom Vig's consent to seize and examine the computer. The following day, Miller examined the computer at PC Doctor and confirmed the existence of several images of children engaged in sexual activity on the computer's C and D hard drives. On February 24, Miller had a phone conversation with Tom Vig, during the course of which, Tom Vig explained to Miller that he used a special program to access and search various news groups on the Internet and that it was while he was in these news groups that he had seen and downloaded pictures of nude children onto the "C" drive. Miller also spoke with Tom Vig's son, Donovan Vig, who told Miller that he too accessed news groups where he had frequently seen pictures of nude children, some of whom appeared to be between five and six years old. According to Miller, but disputed by Donovan Vig at trial, Donovan Vig also admitted that he had downloaded such pictures but that he did not know why he did so.

On October 23, 1997, Tom and Donovan Vig were each charged with one count of knowingly possessing three or more computer image files in violation of 18 U.S.C. § 2252(a)(4)(B).[2] A jury trial followed. At the close of the government's case, defendants made a motion for a judgment of acquittal claiming that: (1) computer files were not "other matter" within the meaning of section 2252(a)(4)(B), and therefore, the evidence was legally insufficient to convict them; and (2) the government had not met its burden of proving that the subjects of the visual depictions

---

[2]Count I of the indictment charged that Tom Vig knowingly possessed 15 computer image files. Count II of the indictment charged that Donovan Vig knowingly possessed 13 such files.

were real children.  The court reserved ruling on the first argument until it had an opportunity to thoroughly consider the questions involved.  It rejected the second argument.

On January 8, 1998, the jury found the defendants guilty.  Subsequently, Donovan Vig filed a motion for a new trial based on newly discovered evidence of juror misconduct.  At the sentencing hearings, the district court announced its ruling denying the defendants' motions for acquittal, as well as Donovan Vig's motion for a new trial.[3]  Each defendant was sentenced to thirty-seven months' imprisonment and a $1000 fine.

## II.  DISCUSSION

### A.  "Other Matter"

In order to be found guilty of violating 18 U.S.C. § 2252(a)(4)(B), an individual must knowingly possess "3 or more books, magazines, periodicals, films, video tapes, or other matter" containing a visual depiction of a minor engaging in sexually explicit conduct.[4]  The central issue on appeal is the appropriate meaning of

---

[3]The district court subsequently filed a Memorandum Opinion and Order explaining, in further detail, its decision that computer image files constituted "other matter" within the meaning of section 2252(a)(4)(B).

[4]The relevant portion of the statute states:

Any person who–

knowingly possesses 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if–

the phrase "other matter" as it is used in the statute. Specifically, whether the defendants can be convicted under section 2252(a)(4)(B) when the visual depictions were saved in three or more computer image files that were located on only a single computer hard drive.[5]

Defendants' contend that "other matter" refers to the physical medium that contains the visual depictions, in this case, the computer hard drive. Therefore, they argue that the evidence presented at trial, which showed that they possessed numerous computer image files, but on only one hard drive, was insufficient to convict them of possessing three or more "other matter." The government argues, on the other hand, that "other matter" refers to the computer image files. Thus, because the evidence showed that each defendant possessed more than three such files, it was sufficient to support their convictions under the statute. In denying the defendants' motions for acquittal, the district court agreed with the government's interpretation, and held that a computer image file constitutes "other matter" within the meaning of section 2252(a)(4)(B). Defendants' contend that the court's decision was based on an erroneous interpretation of the statute.

---

(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(ii) such visual depiction is of such conduct;

shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2252(a)(4)(B).

[5]The computer used by the defendants contained two hard drives, the "C" and the "D." All the computer image files listed in Count I of the indictment against Tom Vig were taken from the "C" drive of the computer and all the computer image files listed in Count II against Donovan Vig were found on the "D" drive.

We review the district court's denial of a motion for judgment of acquittal based upon sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict. See United States v. Smith, 104 F.3d 145, 147 (8th Cir. 1997). We give the government the benefit of all reasonable inferences that could logically be drawn from the evidence. See id. We must uphold the verdict if the evidence so viewed is such that there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendants guilty beyond a reasonable doubt. See id. However, the district court's interpretation of 18 U.S.C. § 2252(a)(4)(B) represents a question of law which we review de novo. See Department of Social Servs. v. Bowen, 804 F.2d 1035, 1037 (8th Cir. 1986).

### 1. Plain Meaning of the Statute

In determining the meaning of the phrase "other matter" as it is used in 18 U.S.C. § 2252(a)(4)(B), our starting point must be the plain language of the statute. See United States v. Talley, 16 F.3d 972, 975 (8th Cir. 1994). Our objective in interpreting a federal statute is to give effect to the intent of Congress. See Linquist v. Bowen, 813 F.2d 884, 888 (8th Cir. 1987). Neither section 2252 nor the chapter provides a specific definition for the term "other matter" as used in this section. In such cases, we look to the ordinary, commonsense meaning of the words. See United States v. Johnson, 56 F.3d 947, 956 (8th Cir. 1995). The ordinary meaning of the words is presumed to express congressional purpose. See Minnesota v. Heckler, 718 F.2d 852, 860 (8th Cir. 1983). Therefore, absent clearly expressed legislative intention to the contrary, the language is regarded as conclusive. See id.

The statute prohibits the possession of "3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction." The language indicates that "other matter" is simply something which, at a minimum, must be

capable of containing a visual depiction.[6]  The computer image files all contained one, and some more than one, visual depiction.[7]  The Seventh Circuit's recent interpretation of the phrase "other matter" in United States v. Hall, 142 F.3d 988 (7th Cir. 1998), also informs our analysis.   In  considering the question of whether computer image files were "other matter" under section 2252(a)(4)(B), the court in Hall noted:

> Although the statute does not define "other matter" . . .  plain meaning suggests a prohibition of three or more of *anything* containing a visual depiction transported in interstate commerce.  In this case, the "other matter" or "materials" are the 403 individually-named computer files.

Hall, 142 F.3d at 999.

Defendants rely heavily on United States v. Lacy, 119 F.3d 742 (9th Cir. 1997), cert. denied, 118 S. Ct. 1571 (1998) in which the court, although conceding that both disks and image files could be viewed as containing visual depictions, nevertheless concluded that two canons of statutory interpretation– *noscitur a sociis* and *ejusdem generis* [8]–led it to believe that  "matter" referred to the physical medium that contained

---

[6]Webster's dictionary defines "contain" as:  "To have as contents or constituent parts; comprise; include."  Random House Webster's Unabridged Dictionary 438 (2d ed. 1997).

[7]We wish to make clear that a computer image file which contains only a single visual depiction still falls within the statutory definition of "other matter."  Section 2252(a)(4)(B) does not require an item to contain multiple visual depictions, one is sufficient.  Cf. United States v. Fellows, 157 F.3d 1197, 1201 (9th Cir. 1998).

[8]*Noscitur a sociis*: The meaning of doubtful terms or phrases may be determined by reference to their relationship with other associated words or phrases. 2A Norman J. Singer, Sutherland Statutory Construction § 47.16 (5th ed. 1992).  *Ejusdem generis*: Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.  Id. § 47.17.

the visual depiction– the hard drives and floppy disks.  See id. at 748.  We decline to adopt the Lacy court's reasoning.  We are aware of the canons of statutory construction *noscitur a sociis* and *ejusdem generis*.  When properly applied they are useful tools.  However, these canons are "only aids to judicial interpretation, and they will not be applied when there is no ambiguity, to defeat the legislative intent and purpose, to make general words meaningless, or to reach a conclusion inconsistent with other rules of construction."  Donovan v. Anheuser-Busch, Inc., 666 F.2d 315, 327 (8th Cir. 1981).

Even if we were to rely on such statutory tools, we find defendants' proposed application of them to the statute to be unpersuasive.  To conclude, as defendants' argue, that a hard drive is the computer equivalent of a book, magazine, periodical, etc., would result in the absurd scenario where an individual who possesses three books with one visual depiction apiece violates the statute, but an individual with hundreds of images on a hard drive does not.  We find the Ninth Circuit's reasoning in United States v. Fellows, 157 F.3d 1197 (9th Cir. 1998), to be more compelling.  In Fellows, the court stated that:  "[a] computer hard drive is much more similar to a library than a book; the hard drive can store literally thousands of documents and visual depictions. Each file within the hard drive is akin to a book or magazine within that library."  Id. at 1201.

In sum, we find that the plain common sense meaning of "other matter" encompasses computer image files.

## B.    Legislative History

Unless exceptional circumstances dictate otherwise, when the terms of a statute are unambiguous, judicial inquiry is complete.  See In re Erickson Partnership, 856 F.2d 1068, 1070 (8th Cir. 1988).  "We ask not what the Congress means; we ask only what the statute means."  United States v. Hepp, 656 F.2d 350, 353 (8th Cir. 1981); see, e.g., Northern States Power Co. v. United States, 73 F.3d 764, 766 (8th Cir. 1996) (stating that when "statutes are straightforward and clear, legislative history and policy arguments are at best interesting, at worst distracting and misleading, and in neither case authoritative").  Even though we are not compelled to examine the statute's legislative history, we nonetheless do so in order to address defendants' claim that our reading of the statute distorts or thwarts congressional intent.  See Sierra Club v. Clark, 755 F.2d 608, 615 n.9 (8th Cir. 1985).

Defendants argue at length that the legislative history reveals a congressional intent that "other matter" was not meant to include computer image files.  Their focus is the addition of section 2252A(a)(5)(B) in 1996 which criminalized the knowing possession of "any book, magazine, periodical, film, videotape, computer disk, or any other material that contains 3 or more images of child pornography."  18 U.S.C. § 2252A(a)(5)(B).   The district court concluded that the addition of section 2252A(a)(5)(B) did not mean that the conduct at issue was not already criminalized by section 2252(a)(4)(B). Defendants contend, however, that the new amendment cannot simply be read as clarifying the existing law. They argue that the amendment when coupled with the Senate Judiciary Committee's comments that "[s]ince a single computer disk is capable of storing hundreds of child pornographic images, current law effectively permits the possession of substantial collections of child pornography, a loophole that will be closed under this section," conclusively proves that Congress did not intend for the phrase "other matter" in section 2252(a)(4)(B) to include computer image files.  S. Rep. No. 104-358 (1996).

We are not persuaded by this argument. We do not think that the Committee's remarks, which go against the plain meaning of the statute and made six years after the passage of section 2252(a)(4)(B), are entitled to much weight. The Supreme Court has stated that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." United States v. Price, 361 U.S. 304, 313 (1960). "[S]uch '[l]egislative observations . . . are in no sense part of the legislative history.'" Oscar Mayer & Co. v. Evans, 441 U.S. 750, 758 (1979). Instead, it is the intent of the Congress that enacted the section that controls. See id. Moreover, the Supreme Court has observed that "even when it would otherwise be useful, subsequent legislative history will rarely override a reasonable interpretation of a statute that can be gleaned from its language and legislative history prior to its enactment." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S 102, 118 n. 13 (1980) ( noting also that a "mere statement in a conference report . . . as to what the Committee believes an earlier statute meant is obviously less weighty").

Section 2252(a)(4)(B) first went into effect on November 29, 1990. See Pub. L. No. 101-647, § 323(a)(2), 104 Stat. 4816, 4818 (1990). Examination of its legislative history prior to this date reveals no insight as to what Congress intended the precise scope of "other matter" to be. See 1990 U.S.C.C.A.N. (104 Stat.) 6472 et seq. If anything, the addition of section 2252(a)(4)(B) indicates an expansion of Congress's enforcement authority under the statute, because now, in addition to transportation, sale, and distribution, the mere possession of child pornography was also criminalized. In short, we think that the legislative history contains nothing that would justify our departing from the statute's plain, ordinary meaning.[9] Thus, based on the plain meaning of the statute, and bolstered by the absence of legislative history to the

---

[9]Finally, defendants contend that the rule of lenity bars their prosecution under section 2252(a)(4)(B). However, because we have concluded that no grievous ambiguity or uncertainty exists in the statute involved, we find the rule of lenity to be inapplicable in this case. See United States v. Long Elk, 805 F.2d 826, 829 (8th Cir. 1986).

contrary, we hold that computer image files are encompassed within the meaning of "other matter" in section 2252(a)(4)(B).

## C.     Depictions of "Real Children"

Donovan Vig also claims that the district court erred in denying his motion for judgment of acquittal because the government did not present sufficient evidence showing that the subjects of the visual depictions were real minors as required under the statute.  See 18 U.S.C. § 2252(a)(4)(B)(i) & (ii).[10]   In reviewing the sufficiency of the evidence, we consider it in the light most favorable to the jury verdict and accept all reasonable inferences from the evidence which tend to support the jury verdict.  See United States v. Broyles, 37 F.3d 1314, 1317 (8th Cir. 1994).  Vig's specific argument is that modern technology can create images so similar to a human being that it would be difficult to decipher what they are by just looking at them.  Technology, he speculates, might create computer-generated images that look exactly like real children. He concludes that because the only evidence the government presented to show that the images were of real children were the images themselves,[11] the government failed to meet its burden of proof.  We disagree.

The images were viewed by the jury which was in a position to draw its own independent conclusion as to whether real children were depicted.  See id. at 1318 (finding sufficient evidence that subjects of video were in fact under the age of eighteen when, among other things, videotape was viewed by jury which could draw its own conclusions as to age of subjects).  Furthermore, the jury was aided in its

---

[10]For purposes of this section, "minor" is defined as "any person under the age of eighteen years." 18 U.S.C. § 2256(1).

[11]At trial, the government presented evidence of the images contained in the computer files through paper copies of what would appear on a computer screen if one were to view the files using a computer or to print the contents of the files using a printer.

-11-

observations by Dr. Rich Kaplan, an associate professor of pediatrics with a specialty in child maltreatment.  Dr. Kaplan testified that at least one of the subjects from the image or images found in each of the thirteen files charged against Vig, except one, was a minor.

Vig, nevertheless, argues that although  Dr. Kaplan may have testified that the subjects were minors, he failed to testify that they were real minors and not computer-generated images.  We note, however, that the defense failed to cross-examine or in any way rebut the testimony elicited from Dr. Kaplan.  Vig produced no expert evidence at trial to show that the images were computer generated or other than what they appeared to be.  In essence, Vig's claim that the images may not have been of real children is purely speculative and we do not think that the government, as part of its affirmative case, was required to negate what is merely unsupported speculation.  See United States v. Nolan, 818 F.2d 1015, 1020 (1st Cir. 1987) (stating that uncorroborated speculation that some undefined technology exists to produce pornographic pictures without use of real children is not sufficient basis for rejecting lower court's determination to admit evidence).  Proof  beyond a reasonable doubt does not require the government to produce evidence which rules out every conceivable way the pictures could have been made without using real children.  See id.  We think that the government presented sufficient evidence from which a jury could reasonably infer that the subjects of the visual depictions were actual minors engaging in sexually explicit conduct.

### D.    Juror Misconduct

Finally, Donovan Vig challenges the district court's denial of his motion for a new trial or, in the alternative, for an evidentiary hearing based on newly discovered evidence of juror misconduct. The alleged misconduct centers around a juror's comments in a post-trial radio interview.  The juror found Donovan Vig's claim, that the child pornography was unknowingly downloaded along with the other

-12-

pornography, was inconsistent with the evidence that one of the files contained only images of child pornography, not interspersed with anything else. Vig asserts that no such factual evidence was admitted at trial and therefore the juror's consideration of such facts must be considered an extraneous influence on the jury verdict.

The district court may grant a motion for a new trial based on newly discovered evidence "if required in the interest of justice." Fed. R. Crim. P. 33. In handling allegations of juror misconduct, the district court has broad discretion and its decision will be affirmed absent an abuse of discretion. See United States v. Williams, 77 F.3d 1098, 1100 (8th Cir. 1996). Rule 606(b) generally prohibits a juror from impeaching his or her verdict with the exception that a juror may testify to extraneous information or improper influence in the jury room. See United States v. Krall, 835 F.2d 711,715-16 (8th Cir. 1987). "Extrinsic or extraneous influences include publicity received and discussed in the jury room, matters considered by the jury but not admitted into evidence, and communications or other contact between jurors and outside persons." United States v. Bassler, 651 F.2d 600, 602 (8th Cir. 1981).

The district court denied Vig's motion, concluding that the comments did not constitute consideration of "extraneous" information but related merely to the juror's own internal mental processes. We agree. At worst, the juror's comments reflect a misapprehension of the evidence presented. Vig, nevertheless, argues that misapprehension of the evidence alone is sufficient for a finding of extraneous influence. We cannot accept this proposition. Examination of the method and manner in which a juror construes evidence presented during trial, would plunge this court into the very kind of post-verdict anatomization of a juror's thought processes that is barred by Rule 606(b). Accordingly we find no abuse of the district court's discretion in denying Donovan Vig a new trial or an evidentiary hearing.

## III.   CONCLUSION

For the reasons discussed above, we affirm the district court and uphold the defendants' convictions.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

I respectfully dissent from the court's judgment because I think that United States v. Lacy, 119 F.3d 742 (9th Cir. 1997), cert. denied, 118 S. Ct. 1571 (1998), was correctly decided. Even if that case, for the reasons that the court mentions today, adopted a construction of the statute that is problematic, I believe that the rule of lenity requires a result different from the one that the court reaches in this case.

It seems to me that the phrase "other matter" lends itself as plausibly to a construction that favors the defendants as it does to the opposite construction. The view of the Seventh Circuit, and of the court today, that "other matter" means "anything containing a visual depiction" is a reasonable one, see United States v. Hall, 142 F.3d 988, 999 (7th Cir. 1998), but the view of the Ninth Circuit that "other matter" includes only physical objects like those enumerated in the statute is equally reasonable. See United States v. Lacy, 119 F.3d at 748.

Both parties to the case maintain that the other's interpretation leads to absurdity. These arguments are unhelpful because neither interpretation can avoid absurd results. The court points out that interpreting "other matter" to mean a hard drive rather than a file would be absurd because someone who possessed three books containing one proscribed image each would be in violation of the statute, while someone who possessed a hard drive containing hundreds of such images would not be. But the court's interpretation also leads to an absurd result: Under the court's holding, someone who possessed three books containing one proscribed image each would be in violation of the statute, while someone who possessed a computer file containing hundreds of such images would not be. There is in fact no interpretation that can prevent evident incongruities: There is no question that a person who possessed a thousand-page book

filled with images of child pornography would not be in violation of the statute. Congress ensured such anomalies when it wrote the statute as it did.

The other arguments that the parties advance on the meaning of "other matter" create an equally unresolvable battle of analogies. Is a hard drive like a book or a library? Is it significant that computer files can be made into tangible objects by printing, or is printing from files just like tearing pages from a book? These kinds of inquiries can only give rise to speculation about congressional intent, and to guesswork about which of two reasonable alternative constructions is the right one.

As the court itself points out, moreover, the relevant legislative history "reveals no insight into what Congress intended the precise scope of 'other matter' to be." Once we have seized " 'every thing from which aid can be derived' " and "can make 'no more than a guess as to what Congress intended,' " Reno v. Koray, 515 U.S. 50, 65 (1995), quoting Smith v. United States, 508 U.S. 223, 239 (1993) (internal quotation marks omitted), and Ladner v. United States, 358 U.S. 169, 178 (1958), respectively, our duty is to adopt the construction of the relevant statute that favors the defendants. The statutory language is grievously ambiguous, and, after looking to the arguments of the parties and the legislative history, we still can make "no more than a guess" as to which of two reasonable interpretations would accomplish Congress's intention. The rule of lenity should therefore apply, and I would thus reverse the judgment of the trial court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-15-