# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 98-2579

_____

United States of America,  *
                           *
            Appellee,      *
                           *    Appeal from the United States
      v.                   *    District Court for the
                           *    Northern District of Iowa.
Eddie James,               *
                           *
            Appellant.     *

_____

Submitted: November 17, 1998
Filed: March 31, 1999

_____

Before McMILLIAN, FLOYD R. GIBSON, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Eddie James appeals his convictions and sentence resulting from federal firearms offenses. He challenges the sufficiency of the evidence to support his convictions and contends that the district court[1] abused its discretion at trial by refusing to give a particularly worded unanimity instruction and by admitting the testimony of a

_____

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa, sitting by designation.

cooperating witness. He also contends that the district court erred by imposing a four-level sentencing enhancement. We affirm.

## I.

On at least two occasions between September 1994 and March 1995, Eddie James and Larry David Baskerville engaged in a scheme to obtain firearms in Iowa and sell them to friends in Chicago, Illinois. Because of James's history of violence and a past conviction for carrying a concealed weapon, James was not able to obtain a permit to acquire handguns under Iowa law, and federal law prohibited federally licensed firearms dealers from transferring handguns to James. Baskerville, on the other hand, was able to obtain a permit to purchase handguns. To complete the scheme, James would accompany Baskerville to the gun shop where Baskerville would purchase handguns, sometimes with money provided by James. James would then drive Baskerville and the firearms to Chicago and resell the guns to his friend, Corey Hilliard, and other unindicted coconspirators, including Walter Meeks and Gregory Bussey, who were both involved in gang activities. Hilliard was in turn reselling the firearms he obtained to Meeks.

In total, the government charged that James and Baskerville illegally transferred approximately 87 firearms to James's associates in Chicago. Forty-three of those firearms were recovered during criminal investigations in and around Chicago. James and Baskerville became the targets of surveillance by agents of the Federal Bureau of Alcohol, Tobacco, and Firearms (ATF). They were arrested on March 11, 1998, after they purchased firearms and ammunition, sold one firearm to a minor in Iowa, and drove to Chicago where they parked James's car near Hilliard's house. The ATF agents found guns in the trunk of James's car.

James was charged in a 16-count second superseding indictment, alleging offenses of illegally transferring, selling, or transporting firearms across state lines

2

without a federal license, conspiracy to do so, and aiding and abetting the making of false statements to a federally licensed firearms dealer. Baskerville agreed to cooperate with authorities and testified at trial against James in exchange for a plea agreement with the government. A federal jury found James guilty of count 12 and count 13, which charged that on October 5, 1994, and again on October 7, 1994, James willfully, and without a license, transferred, sold, or transported firearms to Corrie Hilliard, an unlicensed resident of another state, in violation of 18 U.S.C. § 922(a)(5) and § 924(a)(1)(D) (1994). The jury also convicted James on count 15, which charged James with conspiring with Baskerville and others to willfully, and without a license, transfer, sell, or transport firearms to an unlicensed resident of another state, in violation of 18 U.S.C. §§ 371, 922(a)(5), 924(a)(1)(D).

The district court sentenced James to 60 months of imprisonment on each of counts 12, 13, and 15, all to run concurrently. In calculating his sentence, the district court assessed a four-level increase to James's offense level for possessing or transferring a firearm with knowledge or reason to believe that the firearm would be used in connection with another felony offense. See U.S. Sentencing Guidelines Manual § 2K2.1(b)(5) (1997). James appeals.

## II.
### A. Sufficiency of the Evidence

"We review the district court's denial of a motion for judgment of acquittal based upon sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict" and "giv[ing] the government the benefit of all reasonable inferences that could logically be drawn from the evidence." United States v. Vig, Nos. 98-1982/2003, 1999 WL 47733, at *2 (8th Cir. Feb. 2, 1999). Viewing the evidence in this light, we must uphold the verdict if "there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant[] guilty beyond a reasonable doubt."

3

Id. We do not lightly overturn the verdict of a jury. See United States v. Gillings, 156 F.3d 857, 860 (8th Cir. 1998).

James contends that there was insufficient evidence of willfulness to sustain his convictions on counts 12 and 13 (alleging violations of 18 U.S.C. §§ 922(a)(5) and 924(a)(1)(D)) and count 15 (charging conspiracy to violate 18 U.S.C. §§ 922(a)(5) and 924(a)(1)(D)). The substantive offense articulated in section 922(a)(5) makes it unlawful for an unlicensed person "to transfer, sell, trade, give, transport, or deliver any firearm" to an unlicensed person who resides in a state other than the state in which the transferor resides; and section 924(a)(1)(D) prohibits the "willful" violation of this substantive offense. James contends his conduct was not willful because he was not aware he was violating the law when he and Baskerville transported firearms to Chicago. James testified that he did not sell any of the firearms and did not know that a federal license was required for transporting firearms across state lines.

We find this argument to be unavailing. The Supreme Court has recently addressed this issue and defined "willful" broadly to include an act "undertaken with a bad purpose." Bryan v. United States, 118 S. Ct. 1939, 1945 (1998) (internal quotations omitted). The Court reasoned, "knowledge that the conduct is unlawful is all that is required." Id. at 1947. Specifically, the Court held that the government is not required to prove a defendant knew about the federal licensing requirement in order to satisfy the willfulness component of section 924(a)(1)(D). Id. at 1948-49. In this case, the evidence shows that James knew he was unable to legally obtain the firearms for his friends in Chicago. Larry Baskerville testified that on October 5, 1994, and October 7, 1994, he purchased firearms with James with the understanding that they would sell the firearms in Chicago, and that James drove them to Chicago where they sold the firearms to Hilliard. James, who had previously been charged with the possession of concealed weapons and who knew that he could not lawfully purchase or sell a firearm, transported the firearms from Iowa to Chicago where he participated in selling and transferring them to Hilliard. There is ample evidence in the record to

4

support the jury's conclusion that James knew his conduct was unlawful, thus satisfying the willfulness requirement of section 924(a)(1)(D) beyond a reasonable doubt.

## B. Alleged Trial Errors

James contends that the district court erred by admitting the testimony of Larry Baskerville, a cooperating witness who testified against James in exchange for a plea agreement with the government. In support of his argument, James cites United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998) (holding the government violates the antigratuity statute where it offers leniency to a witness in exchange for truthful testimony) (vacated). The Tenth Circuit was quick to vacate this opinion, however, and the en banc court has recently reached a contrary conclusion. See United States v. Singleton, 165 F.3d 1297 (10th Cir. 1999). Because James did not object to Baskerville's testimony on this basis at trial but raises the argument for the first time on appeal, we review only for plain error. See Fed. R. Crim. P. 52(b). If a trial error was plain and affected the defendant's substantial rights, we should exercise our discretion to correct the error "'if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" United States v. Comstock, 154 F.3d 845, 847 (8th Cir. 1998) (quoting United States v. Olano, 507 U.S. 725, 736 (1993)). No error exists at all in this case. We have previously stated that we agree with the Tenth Circuit's en banc opinion, holding that the federal antigratuity statute "does not sweep so broadly as to prevent prosecutors from offering leniency to an individual in exchange for truthful testimony." United States v. Johnson, No. 98-2671, 1999 WL 55234, at *5 (8th Cir. Feb. 8, 1999). Thus, the district court did not commit plain error by allowing Baskerville to testify.

James also contends that the district court erred in instructing the jury. He first argues that the district court abused its discretion by not giving a sufficiently specific unanimity instruction regarding the elements of the crime of transporting, transferring, or selling firearms, as reflected in Instruction No. 10. That instruction lists four

essential elements of the crime and concludes with the following statement, "If the government has proved all four of these essential elements beyond a reasonable doubt in respect to the count you are considering, you must find the defendant guilty on that count . . . ." (Gov't's Adden. at 1.) James's counsel objected to this instruction but only requested that the Government be required to prove "each" of the four essential elements rather than "all" of the essential elements. (Trial Tr. at 582.) This objection appears to be based on nothing more than semantics and did not preserve any error concerning the issue of juror unanimity. Furthermore, James did not explicitly request a more specific unanimity instruction than the general instruction given. Therefore, we review only for plain error. See United States v. Jorgensen, 144 F.3d 550, 560 (8th Cir. 1998).

The instructions in this case included a general charge that the jury must arrive at a unanimous verdict for each count. "This court has repeatedly held that a general unanimity instruction is usually sufficient to protect a defendant's sixth amendment right to a unanimous verdict." United States v. Davis, 154 F.3d 772, 783 (8th Cir. 1998), cert. denied, 119 S. Ct. 1072, 1078, 1090 (1999). Where there is a genuine risk of jury confusion, a district court may need to give a more specific unanimity instruction, but "the mere fact that an instruction could conceivably permit a jury to reach a non-unanimous verdict is not sufficient to require reversal when the jury has been instructed that it must reach a unanimous verdict." Id. (internal quotations and alterations omitted); see also United States v. Hiland, 909 F.2d 1114, 1139-40 (8th Cir. 1990).

James argues that there was a risk of confusion because the first element of Instruction No. 10 required the jury, in part, to choose among alternative modes of committing the crime. Specifically, the instruction used the statutory language, requiring a showing that the defendant "transferred, sold, gave, transported, or delivered a firearm or firearms to another person who did not reside in the state in which defendant resided." (Gov't's Adden. at 1.) See 18 U.S.C. § 922(a)(5). James

6

argues that the jury should have been specifically required to agree upon which one of the alternative modes of transfer he committed. We disagree.

We find it imperative in this situation to distinguish between a statute creating several offenses and a statute merely enumerating several ways of committing the same offense. See United States v. Street, 66 F.3d 969, 974 (8th Cir. 1995). The statute at issue falls within the latter category of statutes. In section 922(a)(5), Congress created the single offense of transferring (by any one of several different means) a firearm by an unlicensed person to any other unlicensed person who resides in a different state than the state in which the defendant resides. In one sentence, the statutory language defines a single crime broadly prohibiting the transfer of firearms by unlicensed persons to other unlicensed persons who reside in a different state, and that transfer may be accomplished by a number of related but different specified means.

Instruction No. 10 lists all of the specified alternative statutory means of transferring firearms to a resident of a different state, as prohibited by section 922(a)(5). Because the statute does not seek to create several crimes based on each listed alternative mode of transfer, the jury is not required to agree upon or articulate which alternative means of transfer the defendant used. See Schad v. Arizona, 632 (1991) (plurality opinion) ("Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.") (internal quotations omitted). "[I]t has long been the general rule that when a single crime can be committed in various ways, jurors need not agree on the mode of commission." Id. at 649 (Scalia, J., concurring). In returning a general verdict for a single crime, it is permissible for "different jurors [to] be persuaded by different pieces of evidence," and yet agree that the defendant violated the statute. United States v. Bellrichard, 62 F.3d 1046, 1049 (8th Cir. 1995) (internal quotations omitted), cert. denied, 517 U.S. 1137 (1996). The evidence in this case overwhelmingly supports a verdict based on several modes of transfer. There was evidence that James drove or transported the firearms to Hilliard, that he gave the firearms to Hilliard, that he sold the firearms to Hilliard,

7

and that he delivered the firearms to Hilliard. We find no error at all in the district court's instructions, and consequently, no plain error occurred by the absence of a more specific unanimity instruction.

In his reply brief, James argues for the first time that the district court erred by characterizing the crimes covered by Instruction No. 10 as "transporting" charges. Because James raised this argument for the first time in his reply brief, we will not consider the argument on appeal. See United States v. Wade, 111 F.3d 602, 603 n.3 (8th Cir. 1997).

## C. Alleged Sentencing Error

At sentencing, the district court assessed a four-level enhancement to James's offense level pursuant to USSG § 2K2.1(b)(5), which provides for this increase when a defendant is found to have "possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." The district court was convinced by all of the record evidence that James knew or had reason to believe that the firearms would be used or possessed in connection with other felony offenses. On appeal, James argues that there was no evidence to show he knew or had reason to believe how the firearms would be used by the transferees. We review the district court's factual findings for clear error. See United States v. Brown, 148 F.3d 1003, 1007 (8th Cir. 1998), cert. denied, 119 S. Ct. 1092 (1999).

The evidence before the district court at the time of sentencing included the following. James admitted to being a member of a gang. The 43 firearms recovered and traced back to Baskerville were shown to have been involved in criminal activity. One firearm was recovered in connection with a homicide in Milwaukee, and the others were recovered in connection with drug trafficking offenses, assaults, and offenses involving juvenile offenders in and around the Chicago area. Testimony at sentencing

8

indicated that Walter Meeks and Gregory Bussey, to whom James and Baskerville delivered firearms in Chicago, were gang members involved in drug trafficking and that firearms are used in the drug trade to protect the drugs. Considering the entire record, we find no clear error in the district court's finding that James knew or had reason to believe that the firearms he transferred to associates in Chicago would be used in connection with another felony offense. We agree with the district court's observation that "one would have to be extremely naive to believe otherwise. All of the evidence in this case, both that during the trial and that . . . heard [during sentencing], more than convinces [us] that the defendant, if he didn't specifically know, he certainly had good reason to believe that these guns were going into gang activities in south Chicago." (See Sent. Tr. at 65.)

## III.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT